FILED
IN CLERKS OFFICE

2005 FEB 18  P 3: 45

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CIRIACO PUCILLO )<br>    Plaintiff )<br> )<br>v. )<br> )<br>METSO PAPER INC. AND )<br>VALMET CONVERTING, INC. )<br>    Defendants )  | C.A. NO. 03-CV-12359 MLW |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## TO AMEND THE COMPLAINT

This action arises out of injuries allegedly suffered by the Plaintiff, Ciriaco Pucillo, on or about March 22, 2002. On that date, Mr. Pucillo was operating an Atlas Model CSE 1250R Slitter Rewinder (hereinafter the "the Product") as an employee of Proma Technologies, Inc., (hereinafter "Proma") in Franklin, Massachusetts. The Product is equipped with a control board with a spring loaded wire, or "switch", that controls the speed of the machine.

On March 22, 2002, the Plaintiff, was seriously injured when, as a result of a product malfunction, the core sped up to its maximum speed of approximately 3000 feet per minute without warning. The core torqued and was ejected from the machine. The Plaintiff was struck in the face by the ejected core. The Plaintiff alleges that this accident was a result of the improper setting of the speed control switch on the daughter card.

The Plaintiff originally alleged that, for all times relevant to this action, the control board and switch were provided to Proma by the Defendant, Valmet Converting, Inc. (hereinafter "Valmet"). The Plaintiff further alleged that the switch, including the speed control switch, had been set by Valmet prior to distribution to Proma, and that Valmet was aware of the specific application utilized by Proma of the control boards and switch.

A Complaint was filed relative to Mr. Pucillo's action on October 28, 2003, and was removed to the Federal Court on or about November 26, 2003. Mr. Pucillo alleged that the Defendants failed to warn and instruct users of the Product of the defective character of the component parts, including the control board and switches, and/or the need to replace defectively designed, manufactured, and/or assembled parts within the Product; negligently developed, designed, assembled, inspected, tested, packaged, sold and/or distributed the component parts, including the control board and switches; and/or negligently failed to take reasonable safety precautions to prevent injuries to users of the Product, including Mr. Pucillo.

Discovery to date has revealed that Valmet was a corporation organized under the laws of Connecticut that had a principal place of business in Charlotte, North Carolina. On January 1, 2000, Valmet purchased certain assets from Atlas Group America, Ltd. (hereinafter "Atlas"), a company located in England with a branch in the United States. The purchase included the facility in North Carolina, for the sum of One Dollar ($1.00). Atlas' United States branch did not survive the purchase of the assets. Valmet continued with the enterprise of Atlas, which the Plaintiff alleges resulted in a de facto merger or consolidation.

Subsequently, Valmet entered into an agreement with Bobst Group, S.A., a Swiss Corporation, on or about October 21, 2003, that was consummated on or about January 30, 2004, with an entity known as Bobst Group USA Inc., by which Valmet sold the business assets acquired from Atlas. Valmet's United States branch did not survive the purchase of the assets. Bobst Group continued with the enterprise of Valmet, which the Plaintiff alleges resulted in a de facto merger or consolidation.

Thereafter, Bobst Group has continued to maintain a sales and service network providing service and parts support for the packaging industry, including Proma Technologies.

Discovery has further revealed that Atlas in England sold the Product to Proma (f/k/a VanLeer Metalized Products) in 1993. Atlas' branch in North Carolina provided sales and service to PROMA from 1993 until on or about January 1, 2000. During that period, Proma/VanLeer would order and receive replacement parts, including drive boards and/or

daughter cards, from Atlas in North Carolina. Atlas would obtain the replacement parts, including drive boards and/or daughter cards, from Atlas in England and would ship them to Proma. During that period, Proma would also send drive boards and/or daughter cards in need of repair to Atlas in North Carolina. Again, Atlas would send the drive boards and/or daughter cards to Atlas in England for repair, and return the repaired boards and/or cards to Proma.

The Plaintiff alleges that for all times relevant to this action Atlas, both in England and in North Carolina was aware of the specific application utilized by Proma and was responsible to ensure that the "switch" on the daughter card was set correctly.

Valmet provided sales and service to PROMA from on or about January 1, 2000, until on or about January 30, 2004. During that period, Proma would order and receive replacement parts, including drive boards and/or daughter cards, from Valmet in North Carolina. Valmet would obtain the replacement parts, including drive boards and/or daughter cards, from Atlas in England and would ship them to Proma. During that period, Proma would also send drive boards and/or daughter cards in need of repair to Valmet in North Carolina. Again, Valmet would send the drive boards and/or daughter cards to Atlas in England for repair, and return the repaired boards and/or cards to Proma.

The Plaintiff alleges that for all times relevant to this action Valmet was aware of the specific application utilized by Proma and was responsible to ensure that the "switch" on the daughter card was set correctly.

The Plaintiff seeks to amend his original Complaint to allege with more particularity the cause of action against the original defendants, and to add an additional count against Valmet, as the successor corporation to Atlas. Further, in light of the discovery to date, the Plaintiff respectfully request permission to amend his Complaint to add the Atlas, both in the United States and in England and Bobst Group as additional Defendants.

Unless the opposing party can show prejudice, bad faith, or undue delay, a court should grant leave to file an amended pleading. *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 230

(1962). Leave to amend should be freely given when justice so requires. Fed.R.Civ.P. 15(a); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 665 (3d Cir. 1999).

The Plaintiff is filing his Amended Complaint along with this pleading.

Accordingly, the Plaintiff respectfully requests that this Court grant him leave to file his Amended Complaint to more particularly allege Plaintiff's allegations and to add additional Defendants. For these reasons Plaintiff asks the Court to grant leave to file the amended pleading.

Respectfully Submitted,

/s/ Maureen Counihan

Maureen Counihan, Esq. (B.B.O. #549098)
Law Offices of Maureen Counihan, P.C.
67 South Bedford Street
Suite 400 West
Burlington, MA 01803
(781) 229-5884

*Attorney For Plaintiff Ciriaco Pucillo*

Dated: February 18, 2005