UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CIRIACO PUCILLO,   )<br>           Plaintiff,   )<br>                                 )<br>     v.                          )<br>                                 )<br>METSO PAPER INC. AND  )<br>VALMET CONVERTING, INC.  )<br>           Defendants.  )<br>                                 ) | Case No. 03-CV-12359 MLW |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO AMEND COMPLAINT**

Defendants Metso Paper Inc. and Valmet Converting, Inc. submit this memorandum in opposition to plaintiff's motion to amend the complaint to add three European companies and several additional theories of liability. The proposed amended complaint does not provide any defendant, current or prospective, with fair notice of the basis of the claims asserted against it. In addition, the joinder of these new claims and new defendants threatens to delay this case for months and dramatically increase its costs without any likely corresponding benefit to the ultimate resolution of the case. This case already is more than a year old. A substantial amount of discovery has been completed. This well-developed record amply demonstrates the present defendants' entitlement to summary judgment. The proposed amended complaint, as demonstrated below, appears to be nothing more than an attempt to expand the scope of the claims in this case and to perpetuate the discovery process in an effort to delay the ultimate resolution of this case.

First, the proposed amended complaint is hopelessly confusing with respect to who it is that the plaintiff now seeks to add as defendants and what grounds allegedly exist for the claims against them. For example, paragraph 3 of the proposed amended complaint names **Valmet**

**Converting Inc.** as a defendant, alleges that it was "previously **Atlas Group Americas**" and defines it to "**include**[] **Valmet Atlas Plc**. (previously **Atlas Converting Equipment**)."  (Am. Cplt. ¶ 3, emphasis added.)  All four of these named entities are defined in paragraph 3 as "hereinafter '**Valmet.**'"  (*Id*., emphasis added.)

In paragraph 4, the proposed amended complaint names "**Atlas Converting Equipment Ltd.**" as a defendant.  (Am. Cplt. ¶ 4, emphasis added.)  This time, it is alleged to be "f/k/a **Valmet Atlas Plc**" – the opposite of the allegation in paragraph 3 – and also to be "f/k/a **Atlas Group America Ltd.**" – the company that is alleged to be **Valmet Converting Inc.** in paragraph 3.  (Am. Cplt. ¶¶ 3, 4, emphasis added.)  In this paragraph, the three names are defined to be "hereinafter '**Atlas UK,**'" even though each already is defined for purposes of the complaint as **Valmet** in paragraph 3.  (Am. Cplt. ¶¶ 3, 4, emphasis added.)

Paragraph 5 of the proposed amended complaint names "**Atlas Group Americas**" as a defendant, which is identified in paragraph 3 as **Valmet Converting Inc.** and in paragraph 4 as **Atlas Converting Equipment Ltd**.  These companies are defined in this paragraph as "hereinafter **Atlas**,'" even though each already is defined for purposes of the complaint as both **Atlas UK**, in paragraph 4, and **Valmet**, in paragraph 3.  (Am. Cplt. ¶¶ 5, 4, 3, emphasis added.)

By defining the term **Valmet** to represent 4 named entities, the term **Atlas UK** to represent 3 named entities all of which already are defined as **Valmet**, and the term **Atlas** to represent 2 named entities all of which already are defined as both **Valmet** and **Atlas UK**, plaintiff makes it impossible for any defendant to know who is alleged to have done what. Adding to the confusion, the proposed amended complaint alleges that each group of defined entities – **Valmet**, **Atlas UK** and **Atlas** – was negligent for the identical conduct.  In addition, the proposed amended complaint alleges that **Valmet**, with its 4 named entities, is a successor to

**Atlas**, with its two named entities, and that **Bobst S.A.**, a company in Switzerland, is a successor to **Valmet** and its 4 named entities. In short, after more than a year of litigation, the proposed amended complaint would add no less than three additional defendants, all based in Europe, and multiple new claims against the new defendants and current defendants by alleging that everyone is or was everyone else, everyone did everything, and everyone is liable for everyone else's actions.

The First Circuit has made clear that the liberal rules of pleading permitted by the Federal Rules, do not vitiate the basic tenet that each party is entitled to fair notice of the basis of the claims against it, explaining:

> The bottom line is this: while courts should construe pleadings generously, paying more attention to substance than to form, they must always exhibit awareness of the defendant's inalienable right to know in advance the nature of the cause of action being asserted against him.… A fundamental purpose of the Federal Rules of Civil Procedure is to afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest.

*Rodriquez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1171 (1st Cir. 1995) (internal citations omitted). This basic tenet should be even more strictly applied when the pleading is an amended pleading in a case where a significant amount of discovery has been completed. Here, plaintiff's strategy of alleging that some entities "include" other entities, that nearly all entities are predecessors or successors, or both, of each other, and that all entities engaged in the same culpable conduct, effectively defeats the defendants' ability to know the basis and scope of the claims against them.

Second, plaintiff's pleading strategy sets the stage for this case to be swallowed up in a black hole of expensive discovery involving the history of various acquisitions and reorganizations of corporations located in the United Kingdom and Switzerland, with little or no

likely benefit to this case. Plaintiff's theory of liability in this case is that a "switch" on an electrical circuit board, referred to as a daughterboard, was not in its proper position at the time of this incident, and that the improperly positioned switch caused the plaintiff's accident. (Am. Cplt. ¶¶ 30, 31.)

Plaintiff has conducted the depositions of the president, maintenance manager, electrical engineer and operations manager of Proma Technologies ("Proma"), the owner of the machine and plaintiff's employer. The testimony demonstrates that in or about 1993 the machine was installed with a full set of daughterboards and that after installation Proma purchased additional boards as spares. (Langley Dep. 28, 29; annexed hereto as Exhibit A.) The spares were maintained in a storeroom. (Langley Dep. 31.) Between 1993 and plaintiff's accident in 2002, boards on the machine were replaced at a rate of approximately one board per year. (Langley Dep. 28.) When boards were replaced, Proma would take a replacement board from its storeroom and install it in the machine, and then restock its supply of spares with new or repaired boards. (Langley Dep. 31, 32.) Proma treated the boards as fungible. There was no system for rotating the inventory of spares and there are no records showing what board was used where or when. (Langley Dep. 32, 61.) This practice continued both before and after plaintiff's accident. (Langley Dep. 67.) As such, Proma cannot identify the daughterboard involved in this incident, or when it was sold. (Langley Dep. 67.)

Moreover, when new and repaired boards were purchased by Proma, there was no inspection or installation protocol for the boards. They were simply removed from their shipping box and placed on the shelf in the store room. (Langley Dep. 31.) There was no inspection of the switch location. (Langley Dep. 32.) Therefore, neither Proma nor plaintiff can establish whether the "switch" that plaintiff alleges was improperly set, was placed in its allegedly

improper position by the unidentified seller, or by Proma during installation, or by Proma during machine maintenance.

Thus, plaintiff cannot establish that the product was in its so-called defective condition at the time of sale – an essential element of Massachusetts law. *See Enrich v. Windmere Corp.*, 416 Mass. 83, 616 N.E.2d 1081, 1084 (1993).[1] This failure of proof arises because of Proma's handling of the boards, not because of a lack of defendants or discovery. Adding three additional defendants, all based in Europe, will not change the facts relating to Proma's handling of the boards at issue. The result will only be to increase significantly the cost of defending this case and to delay for many months its inevitable dismissal.

Finally, not withstanding the absence of proof as to the condition of the board at the time of sale, the amended complaint seeks to manufacture claims against Atlas, Atlas UK and Valmet by alleging that each "was responsible to ensure that the 'switch' on the daughterboard card was set correctly." (Am. Cplt. ¶¶ 22, 28, 29.) This allegation is without factual basis and is directly contrary to the record. The boards were received, unpacked, stored and installed in the machine by Proma. (Langley Dep. 28-31.) Over the years, Proma maintained a staff of three to five electricians whose responsibilities included installing the boards. (Langley Dep. 19, 20; Hagopian Dep. 38, annexed hereto as Exhibit B.) The electricians were Proma's first-responders. (Hagopian Dep. 39.) When the electricians needed assistance, they called on Proma's electrical engineer. (Hagopian Dep. 39.) There was no service contract with Valmet, Atlas, Atlas UK or anyone else. (Langley Dep. 82.) Thus, there is no basis in the record for the allegation that Valmet, Atlas and Atlas UK were responsible for ensuring the so-called proper positioning of the "switch" – the allegation upon which the joinder of the new defendants and new claims appears predicated.

---

[1] Defendants also dispute the claim that the board was defective.

Whether to grant leave to amend a complaint is a matter for the Court's discretion. *Acosta-Mestre v. Hilton International of Puerto Rico, Inc.*, 156 F.3d 49, 51 (1st Cir. 1998). Among the reasons for denying leave are "undue delay" and "undue prejudice." *Id.* Here, the totality of the circumstances shows that the proposed amended complaint will unduly delay this case and will unduly prejudice the defendants and prospective defendants.

All non-expert discovery in this case is scheduled to be concluded by April 20, 2005. If leave to amend is granted, the three European defendants must be served and provided time to respond. Even if it is assumed that the new defendants will appear promptly and will not raise jurisdictional motions, plaintiff surely will request an extension of discovery. If the pleading strategy of the amended complaint is a guide, plaintiff will conduct discovery in England regarding the corporate status and business histories and operations of Atlas Group Americas Ltd., Atlas Converting Equipment Ltd. and Valmet Atlas Plc., followed by a similar trip to Switzerland to conduct discovery of Bobst, S.A.[2] Discovery abroad is time consuming and expensive, and in this case it is not likely to address the dispositive issues that arise because of Proma's business practices and records with regard to its handling of the daughterboards. The likely result of the joinder of additional defendants, and the concomitant delays and expense, is merely to delay the disposition of this case on summary judgment. Under these circumstances, denial of plaintiff's motion for leave to amend is appropriate. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 806 (1st Cir. 1987).

---

[2] The manufacturer of the daughterboard at issue is a company in Germany and, as such, discovery in Germany cannot be ruled out.

Accordingly, defendants respectfully request that plaintiff's motion to amend the complaint be denied.

Dated: March 2, 2005                     Respectfully submitted,


By:       /S/
          Mark Petersen, Esq. (B.B.O. #396840)
          Michelle Hansen, Esq. (B.B.O. #561477)
          Law Offices of Mark Petersen
          490 Shrewsbury Street
          Worcester, MA  01604
          (508) 791-0300

          and

          David L. Kelleher, Esq. (B.B.O. #543912)
          Thelen Reid & Priest, LLP
          701 Pennsylvania Ave, NW Suite 800
          Washington, DC 20004
          (202) 508-4000

          *Attorneys for Defendants Metso Paper Inc. and Valmet Converting, Inc.*

## CERTIFICATE OF SERVICE

I, David L. Kelleher, hereby certify that on March 2, 2005, I caused a copy of the foregoing Memorandum of Points and Authorities in Opposition to Motion to Amend Complaint to be filed and served by the Court's electronic filing system and an additional copy served by mailing, first class, postage prepaid, directed to:

Maureen Counihan, Esq.
Law Offices of Maureen Counihan, P.C.
67 South Bedford Street
Suite 400 West
Burlington, MA 01803
(781) 229-5884
Counsel for Plaintiff

                                             /S/
                                David L. Kelleher