UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| **CIRIACO PUCILLO**<br>**Plaintiff**<br><br>v.<br><br>METSO PAPER INC., VALMET CONVERTING, INC., ATLAS CONVERTING EQUIPMENT LIMITED, f/k/a VALMET ATLAS PLC, f/k/a ATLAS GROUP AMERICAS LTD, ATLAS GROUP AMERICAS f/k/a ATLAS CONVERTING EQUIPMENT, AND BOBST SA d/b/a BOBST GROUP USA INC.<br>**Defendants** | C.A. NO. 03-CV-12359 MLW |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

The Plaintiff, Ciriaco Pucillo, respectfully submits this memorandum in response to Defendants, Metso Paper Inc. and Valmet Converting Inc.'s, Memorandum of Points and Authorities in Opposition to Motion to Amend Complaint.

This court should not be mislead by the Defendants assertion that the proposed Amended Complaint "is nothing more than an attempt to expand the scope of the claims in this case and to perpetuate the discovery process in an effort to delay the ultimate resolution of this case." A review of the discovery to date reveals that it is the Defendants who have engaged in a ridiculous shell game designed to thwart the Plaintiff's legitimate claims. Accordingly, it is the Defendants who will be responsible for delaying the ultimate resolution of this case.

If the Amended Complaint is "hopelessly confusing" as to who the Plaintiff seeks to add as Defendants, this is a result of the Defendants own doing. The identity of Valmet Converting

Inc. was taken directly from a Valmet mailing dated May 9, 2000. (Exhibit 1). The identification of Atlas Converting Equipment Ltd. was provided by Legal Language Services, who has been retained to serve any European defendants. (Exhibit 2). The Plaintiff has a right to identify the Defendants by any and all names that they have conducted business as, and should not be penalized because the Defendants continually change their names. Under no circumstances does the Plaintiff intend to give any Defendant the opportunity to argue that they have been improperly named.

While determining the proper identity of the Defendants may require additional written discovery, it is unlikely to cause a significant delay in the discovery process. Clearly, the case will not be "swallowed up in a black hole of expensive discovery".

The Defendants further argue that the Plaintiff should not be allowed to amend the complaint because he is not likely to succeed on his claim. The Defendants incorrectly state that the Plaintiff has taken the depositions of the president and maintenance manager of Proma Technologies. The Defendants actually took those depositions. The Plaintiff has taken the depositions of Greg Hagopian, the electrical engineer and Harold Isherwood, the operations manager of Proma, and Bob Lyons[1], the vice president, Ron Purcell[2], the service technician and Ricky Howe, the customer service manager of Bobst Group f/k/a Valmet Converting f/k/a Atlas Converting (hereinafter "Atlas/Valmet/Bobst").

What the Defendants fail to mention in their opposition is that the spare drive boards purchased by Proma came from Atlas/Valmet/Bobst. According to Ricky Howe, the Atlas/Valmet/Bobst customer service manager, customers in the US that needed spare parts would get those through Atlas/Valmet/Bobst (Exhibit 3, Deposition of Ricky Howe, pp. 11-12,

---

[1] The transcript of Mr. Lyons' deposition is not yet available.
[2] The transcripts of Mr. Purcell's deposition and Mr. Howe's deposition were not available at the time of the filing of the Plaintiff's Motion to Amend Complaint.

18). Atlas/Valmet/Bobst did not keep an inventory of new Infranor drive boards and would order the part from Atlas in England. (Exhibit 3, Deposition of Ricky Howe, pp. 15-16). The records regarding the individual piece of equipment, including any modifications that needed to be made, were kept in England. (Exhibit 3, Deposition of Ricky Howe, p. 23)

Therefore, if Proma needed a replacement drive Howe would provide the Atlas slitter serial number to Atlas in England. They would know what modifications needed to be made to the drive board for that particular serial number. (Exhibit 3, Deposition of Ricky Howe, pp. 26-27) If any modifications need to be made to the board, they would do it in England. (Exhibit 3, Deposition of Ricky Howe pp. 29-30). Specifically, if there was a setting on a switch it would have been done before it was sent to Atlas/Valmet/Bobst. (Exhibit 3, Deposition of Ricky Howe, p. 38). Further, Atlas/Valmet/Bobst does not inspect the boards or make any modifications to the boards once they are sent from England. (Exhibit 3, Deposition of Ricky Howe pp. 31-33).

Drive boards that are sent to Atlas/Valmet/Bobst for repair go through a similar process. The boards are sent to Atlas/Valmet/Bobst who send them to England. (Exhibit 3, Deposition of Ricky Howe, pp. 38-39). Again, the switch would be set in England.

Ron Purcell, the service technician testified that it was also his understanding that the switches on the daughter card were set before they were sent to Proma. (Exhibit 4, Deposition of Ron Purcell p. 140). In addition to providing Proma with new and repaired boards, Atlas/Valmet/Bobst also serviced the slitter on an as needed basis. In fact, a number of service calls were made to Proma by a different service technician in the two years prior to the date of this accident. (Exhibit 4, Deposition of Ron Purcell, pp. 97, 104, 105). According to Purcell, if he was doing an inspection of the machine at Proma and he looked at a drive, he would know

that the switch was unhooked, and he would correct it. (Exhibit 4, Deposition of Ron Purcell, pp. 89, 106).

When Purcell was questioned about the process of changing a drive board he did not mention anything about checking the switch, nor did he know of any written materials indicating that that should be done. (Exhibit 4, Deposition of Ron Purcell pp. 117-118). Moreover, Purcell does not know if any training was given to Van Leer/Proma employees with respect to any visual inspection that should be done prior to installing a new drive was done, but he acknowledged that such training could be part of his job responsibility. (Exhibit 4, Deposition of Ron Purcell p. 119). Purcell has no memory of ever telling anyone at Van Leer/Proma that the switch needed to be checked before a new board was installed. (Exhibit 4, Deposition of Ron Purcell p. 120). In fact, there has been no testimony that anyone from Atlas/Valmet/Bobst ever instructed anyone from Van Leer/Proma to inspect the switch on the daughter card before installing the board. Harold Isherwood, Proma's operations manager testified that Proma was not provided with any training regarding inspection of the boards. (Exhibit 5, Deposition of Harold Isherwood, p. 39).

All of the Proma employees deposed testified that they relied on Atlas/Valmet/Bobst to set the switch, and believed that the boards were ready for installation as received. (Exhibit 6, Deposition of Frank Sereno, p. 50; Exhibit 7, Deposition of Paul Langley, pp. 73, 78; Exhibit 5, Deposition of Harold Isherwood p. 39). The Proma technicians do not do repairs on the drives or daughter cards (Exhibit 7, Deposition of Paul Langley, p. 76). When a technician needs to change a drive board they get one from inventory. (Exhibit 7, Deposition of Paul Langley, p. 42). They do not check the switches (Exhibit 6, Deposition of Frank Sereno, p. 51).

It is undisputed that the switch was not set properly at the time of the accident. Purcell testified that if the switch had been set properly the core would not have been ejected, and he

could determine no other cause of the accident. (Exhibit 4, Deposition of Ron Purcell pp. 148-150).

The Plaintiff's original Complaint was filed only against Valmet and its parent company Metso Paper. The Amended Complaint seeks to expand that claim to the remainder of the Atlas/Valmet/Bobst group. The Amended Complaint also seeks to add a claim against Atlas facility in England where the modifications to the drive boards were made. In light of the above, this is entirely reasonable.

The Plaintiff agrees that the addition of new Defendants may delay the completion of discovery while the Defendants are served and provided time to respond. However, the Plaintiff does not agree that the delay justifies the denial of the Plaintiff's Motion to Amend the Complaint.

Wherefore, the Plaintiff, Ciriaco Pucillo, respectfully requests that this Honorable Court grant him leave to file the Amended Complaint pursuant to Fed.R.Civ.Pr. 15.

Respectfully Submitted,

*signature*
Maureen Counihan, Esq. (B.B.O. #549098)
Law Offices of Maureen Counihan, P.C.
67 South Bedford Street
Suite 400 West
Burlington, MA 01803
(781) 229-5884

*Attorney For Plaintiff Ciriaco Pucillo*

Dated: March 10, 2005