```
                                    Volume I
                                    Pages 1 to 110
                                    Exhibits (None)

           UNITED STATES DISTRICT COURT

             DISTRICT OF MASSACHUSETTS


- - - - - - - - - - - - - - -
CIRIACO PUCILLO,
           Plaintiff(s),

    v.                              Civil Action
                                    No. 03-CV-12359 MLW
METSO PAPER INC. AND
VALMET CONVERTING, INC.,
           Defendant(s).

- - - - - - - - - - - - - - -


    DEPOSITION OF HAROLD ISHERWOOD, a witness called

by counsel for the Plaintiff, taken pursuant to the

applicable rules, before Diane L. McElwee, Registered

Merit Reporter and Notary Public in and for the

Commonwealth of Massachusetts, at the Offices of

Proma Technologies, 24 Forge Park, Franklin,

Massachusetts, on Friday, February 4, 2005,

commencing at 10:05 AM.




                JAMES GIBBONS & ASSOCIATES
                     617-428-0402
```

```
1     A    Correct.
2     Q    Do you know whether anyone from Atlas or
3  Valmet trained anyone at the Proma facility or
4  Van Leer with respect to the switches on the daughter
5  card?
6     A    To the best of my knowledge, no.
7     Q    Was it your understanding that the boards as
8  delivered to Proma or Van Leer were ready for
9  installation?
10    A    Correct.  Absolutely.
11    Q    Does Proma or Van Leer buy more than one
12 type of board from Atlas or Valmet?
13    A    I am sure we do.  To answer your question, I
14 don't know.
15    Q    You therefore wouldn't know the model
16 numbers of those boards, correct?
17    A    No.
18    Q    In 2002 who was responsible for the
19 maintenance of that machine?
20    A    Our maintenance department.
21    Q    For how long had Proma been responsible and
22 prior to that Van Leer been responsible for the
23 maintenance?
24    A    Can you back up?
```

```
                                    Volume:   I
                                    Pages:   1 - 107
           COPY                     Exhibits:  Per Index


                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS


                              C.A. NO.:   03-CV-12359 MLW


         ------------------------------
         CIRIACO PUCILLO,             )
                    Plaintiff,        )
                                      )
           vs.                        )
                                      )
         METSO PAPER, INC., and       )
         VALMET CONVERTING, INC.,     )
                    Defendants.       )
         ------------------------------


                 DEPOSITION OF FRANK H. SERENO, called
         as a witness by and on behalf of the Defendant,
         Valmet Converting, Inc., pursuant to the applicable
         provisions of the Federal Rules of Civil Procedure,
         before Donna M. DiCarlo, Registered Professional
         Reporter and Notary Public in and for the
         Commonwealth of Massachusetts, taken at Proma
         Technologies, 24 Forge Park, Franklin,
         Massachusetts, on Friday, December 3, 2004,
         commencing at 10:02 a.m.



                    *   *   *   *   *   *   *   *   *   *


                        TARALLO & TARALLO
                    PROFESSIONAL COURT REPORTERS

                           P.O. BOX 85
                  AUBURN, MASSACHUSETTS 01501
         TEL: (508) 832-0048          FAX: (508) 832-0209
```

1  understanding is?

2  A.  My understanding is that the switch in
3  question can be in multiple positions to perform
4  different electronical functionality.

5  Q.  And do you have an understanding as you
6  sit here today as to what Van Leer Metalized
7  Products procedure was with regard to the
8  inspection and setting of that switch on the drives
9  before they were installed in the machine?

10  A.  I understand that there was no setting
11  responsibility for Van Leer to set the switch.

12  Q.  And that understanding comes from where?

13  A.  Talking with our people.

14  Q.  You say no setting responsibility.  Would
15  that mean that Van Leer didn't look at the switch
16  and didn't set the switch?

17  A.  No.  It meant we had no responsibility to
18  set the switch.

19  Q.  Well, I'm trying to find out factually
20  what it is you did as opposed to your opinion or
21  conclusion or responsibility.

22      When the drive arrived at your shop --
23  let's take Van Leer first and then we'll take Proma
24  Technologies -- during the time period, this is Van

1  Leer, you don't know whether it was inspected upon
2  receipt; is that correct?
3     A.   That's correct.
4     Q.   You don't know whether it was inspected
5  upon storage, correct?
6     A.   Correct.
7     Q.   Do you know whether or not it was
8  inspected before it was installed?
9     A.   No.
10    Q.   Do you know whether the location of the
11 switch was checked by anyone at Van Leer?
12    A.   I don't believe it was checked.
13    Q.   The drives were all installed by Van Leer
14 between 1993 and 2000, correct?
15    A.   Replacement drives?
16    Q.   Yes.
17    A.   I would guess that is correct. Most of
18 them were. Some may not have been. They may have
19 been installed by Atlas repair people.
20    Q.   Do you have any records that would show
21 which drives were installed by Van Leer and which
22 drives were installed by Atlas repair people?
23    A.   I don't believe those exist.
24    Q.   Let's talk about Proma Technologies. The

1

```
                                    Volume:  I
              COPY                  Pages:   1 - 88
                                    Exhibits: Per Index


              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


                            C.A. NO.:  03-CV-12359 MLW


    ----------------------------
    CIRIACO PUCILLO,            )
             Plaintiff,         )
                                )
      vs.                       )
                                )
    METSO PAPER, INC., and      )
    VALMET CONVERTING, INC.,    )
             Defendants.        )
    ----------------------------
```

DEPOSITION OF ROBERT PAUL LANGLEY, called as a witness by and on behalf of the Defendant, Valmet Converting, Inc., pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Donna M. DiCarlo, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, taken at Proma Technologies, 24 Forge Park, Franklin, Massachusetts, on Friday, December 3, 2004, commencing at 1:03 p.m.

\* \* \* \* \* \* \* \* \* \*

**TARALLO & TARALLO**
PROFESSIONAL COURT REPORTERS

P.O. BOX 85
AUBURN, MASSACHUSETTS 01501
TEL: (508) 832-0048            FAX: (508) 832-0209

1   Q.   But prior to --
2   A.   Prior to the accident, no.
3   Q.   From 1993 until 2002 there was not?
4   A.   Correct.
5   Q.   And is there or was there -- let's keep our reference to make it easier from the time the machine was installed until Mr. Pucillo's accident -- was there a procedure or a protocol for inspecting the drives at the time they were installed in the machine to make sure the switches were in the right location?
12  A.   There wasn't any procedure in place. The drives, they just come in and they're all bubble wrapped to protect them, and I don't even open the bubble wrap. I just take the board wrapped in the bubble wrap to protect it out of the package and I put it back on the shelf. And when the technician needs one, he goes and it's written on the bubble wrap what it is and he'll take the one he needs and reinstall it in the machine.
21  Q.   We talked a short while ago about the electrical schematics that are in your office. Are they documents that you have the technical background to read?

1   Q.   And what was the reason that you contacted
2   Infranor?
3   A.   To try to get a repair cheaper.
4   Q.   And what did they tell you?
5   A.   That they wouldn't repair them because
6   they had to be set up for our specific equipment.
7   Q.   Did they give you any information about
8   what the set up was that was done for your specific
9   equipment?
10  A.   No.  They wouldn't know.  From my
11  understanding, they'll sell the boards to a
12  particular OEM and then they set up the drives the
13  way they want them for their particular machines.
14  And the fellow on the phone told me if I sent the
15  board back to them, that they wouldn't be able to
16  set it up for our machine because they had no
17  knowledge of how it was set up.  So they wouldn't
18  repair them.  So I had to keep sending them back to
19  Atlas.
20  Q.   So was it your understanding that Infranor
21  produces or manufactures a generic board?
22  A.   I think so, yes.
23  Q.   And did you have any conversations with
24  Atlas Valmet about having your specific application

1   beyond repair, that's when I order a new one.
2   Otherwise, it will be repaired and returned.
3       Q.   Do any of your technicians do any repairs
4   on the drives or the daughter cards?
5       A.   No.
6       Q.   Are your technicians or are any of the
7   technicians employed by Proma trained with respect
8   to the switches on the daughter card?
9       A.   I wouldn't know that.
10      Q.   How many people does it take to replace a
11  board?
12      A.   One.
13      Q.   How much do they weigh?
14          MR. SERENO:   The people or the board?
15          MS. COUNIHAN:   That's a very good
16  question, but I'm referring to the board.
17      A.   A couple pounds; two or three pounds.
18      Q.   Are they given any instructions or
19  training with respect to the proper means to
20  install or replace the board?
21      A.   No.
22      Q.   And you indicated that the boards that are
23  removed are sent back to Atlas Valmet?
24      A.   That's correct.

1  drive, is there anything that's done to that drive
2  before it's replaced in the --
3      A.    I couldn't tell you.
4      Q.    That would be something the technicians
5  would know?
6      A.    Right.
7      Q.    I believe you indicated earlier that you
8  understood that when the boards were sent from
9  Infranor to Atlas Valmet, they were then set up for
10 your application and then sent to you; is that
11 correct?
12     A.    That's my understanding, yes.
13     Q.    And do you have an understanding that
14 there are any other parties involved with that
15 transaction?
16     A.    I wouldn't know that.
17     Q.    So you don't know whether Infranor sent it
18 to somebody else who sent it to Atlas Valmet?
19     A.    I wouldn't know that.
20     Q.    Has the application of the slitter at the
21 Proma facility remained essentially the same from
22 1993 to today?
23     A.    I'm not sure what you mean.
24     Q.    At any time from 1993 to today, have you

# CERTIFICATE OF SERVICE

I, Maureen Counihan, hereby certify that on March 10, 2005, I served a copy of the foregoing:

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO AMEND THE COMPLAINT

by mailing, first class, postage prepaid, a copy of same directed to:

David L. Kelleher, Esquire
Thelen, Reid & Priest, LLP
701 Pennsylvania Avenue, NW Suite 800
Washington, DC 20004

Michelle Hanson, Esquire
490 Shrewsbury Street
Worcester, MA 01604

*/s/ Maureen Counihan*
Maureen Counihan, Esquire
BBO#: 549098