## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| CIRIACO PUCILLO )<br>    **Plaintiff** )<br>)<br>v. )<br>)<br>VALMET CONVERTING, INC., ATLAS )<br>CONVERTING EQUIPMENT )<br>LIMITED, f/k/a VALMET ATLAS PLC, )<br>f/k/a ATLAS GROUP AMERICAS LTD, )<br>ATLAS GROUP AMERICAS f/k/a )<br>ATLAS CONVERTING EQUIPMENT, )<br>AND BOBST GROUP SA d/b/a BOBST )<br>GROUP USA INC. )<br>    **Defendants** \_\_\_\_ ) | C.A. NO. 03-CV-12359 MLW |

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1. The Plaintiff, Ciriaco Pucillo, is a resident of Ashland, Middlesex County, Commonwealth of Massachusetts.

2. The Defendant, Valmet Converting, Inc. (previously Atlas Group Americas) which includes Valmet Atlas Plc (previously Atlas Converting Equipment), (hereinafter "VALMET"), a wholly owned subsidiary of Metso Paper Inc., organized under the laws of Connecticut, having its principal place of business until January 30, 2004, at 8041G Arrowridge Blvd., Charlotte, North Carolina.

3. The Defendant Atlas Converting Equipment Limited, f/k/a Valmet Atlas Plc, f/k/a Atlas Group Americas Ltd, (hereinafter "ATLAS UK"), is a foreign corporation located in England at Wolseley Road, Kempston, Bedfordshire MK42 7XT United Kingdom. ATLAS UK does not conduct business in the United States except through its' United States affiliates/branches: Valmet Converting, Valmet Atlas, Atlas Group Americas and/or Bobst Group USA.

4. The Defendant, Atlas Group Americas f/k/a Atlas Converting Equipment, (hereinafter "ATLAS US") was a subsidiary of ATLAS UK, organized under the laws of North Carolina, having its principal place of business at 9800N Southern Pine Blvd., Charlotte, North Carolina.

5. The Defendant, Bobst Group SA is a Swiss Corporation doing business in the United States. Bobst Group SA, maintains a corporate headquarters as Bobst Group USA Inc., (hereinafter BOBST USA) at 146 Harrison Avenue, Roseland, New Jersey.

6. On or about January 30, 2004, Bobst Group SA acquired VALMET and ATLAS lines. From that date forward, BOBST USA has maintained a principal place of business at 13325 South Point Blvd., Charlotte, North Carolina.

## JURISDICTION

7. This is a civil action involving a controversy between citizens of different states in which a citizen of a foreign state is an additional party. The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs. Therefore, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3).

## FACTS

8. The Plaintiff realleges the allegations contained in paragraphs 1 through 7 and further alleges:

9. From 1986 until on or about January 1, 2000, ATLAS US had a principal place of business in North Carolina.

10. On or about January 1, 2000, VALMET purchased certain assets and liabilities from ATLAS US, including the facility in North Carolina, for the sum of One

   Dollar ($1.00). ATLAS US did not survive the purchase of the assets and liabilities.

11. VALMET's continuation of the enterprise of ATLAS US resulted in a de facto merger or consolidation.

12. On or about January 30, 2004, VALMET's parent company, Metso Paper, Inc., entered into a sale of assets with Bobst Group SA, by which Metso Paper, Inc., sold the business assets of VALMET that had been acquired from ATLAS US on or about January 1, 2000. VALMET did not survive the purchase of the assets. Bobst Group SA continued the business as BOBST USA.

13. BOBST USA's continuation of the enterprise of VALMET resulted in a de facto merger or consolidation.

14. Thereafter, BOBST USA has continued to maintain a sales and service network providing service and parts support for the packaging industry, including Proma Technologies.

15. At all times relevant to this action, the Plaintiff, Ciriaco Pucillo, was an employee of Proma Technologies, Inc., f/k/a Van Leer Metalized Products (hereinafter "PROMA"), at 24 Forge Park, Franklin, Massachusetts.

16. On March 22, 2002, the Plaintiff was operating an Atlas Model CSE1250R Slitter Rewinder (hereinafter the "PRODUCT") at the PROMA facility in Franklin, Massachusetts.

17. The PRODUCT is equipped with a drive board with a daughter card mounted thereon. The daughter card has a spring-loaded wire, or "switch", that controls the speed of the machine.

18. ATLAS UK sold the PRODUCT to PROMA in 1993.

19. ATLAS US provided sales and service to PROMA from 1993 until on or about January 1, 2000.

20. From 1993 until on or about January 1, 2000, PROMA would order and receive replacement parts, including drive boards and/or daughter cards, from ATLAS US.

21. ATLAS US would obtain the replacement parts, including drive boards and/or daughter cards, from ATLAS UK, and would ship them to PROMA.

22. From 1993 until on or about January 1, 2000, PROMA would send drive boards and/or daughter cards in need of repair to ATLAS US.

23. ATLAS US would send the drive boards and/or daughter cards to ATLAS UK for repair. Repaired boards and/or cards were returned to ATLAS US who would ship them to PROMA.

24. At all times relevant to this action ATLAS US was aware of the specific application utilized by PROMA and was responsible to ensure that the "switch" on the daughter card was set correctly.

25. VALMET provided sales and service to PROMA from on or about January 1, 2000, until on or about January 30, 2004.

26. From January 1, 2000 until on or about January 30, 2004, PROMA would order and receive replacement parts, including drive boards and/or daughter cards, from VALMET.

27. VALMET would obtain the replacement parts, including drive boards and/or daughter cards, from ATLAS UK, and would ship them to PROMA.

28. From January 1, 2000 until on or about January 30, 2004, PROMA would send drive boards and/or daughter cards in need of repair to VALMET.

29. VALMET would send the drive boards and/or daughter cards to ATLAS UK for repair. Repaired boards and/or cards were returned to VALMET who would ship them to PROMA.

30. At all times relevant to this action VALMET was aware of the specific application utilized by PROMA and was responsible to ensure that the "switch" on the daughter card was set correctly.

31. At all times relevant to this action, the Defendant, ATLAS UK was aware of the specific application utilized by PROMA, and was responsible to ensure that the "switch" on the daughter card was set correctly.

32. On March 22, 2002, the Plaintiff, while in the exercise of due care, started the PRODUCT in the jog mode. Suddenly, as a result of a PRODUCT malfunction, the core sped up to its maximum speed of approximately 3000 feet per minute without warning. The core torqued and was ejected from the machine. The Plaintiff was struck in the face by the ejected core.

33. The Plaintiff's accident was a result of the improper setting of the speed control switch on the daughter card.

## COUNT I – NEGLIGENCE
## VALMET

34. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 33 of this Complaint.

    a. The Defendant negligently failed to furnish and maintain reasonably safe and proper machinery and/or component parts with which the Plaintiff was to perform his assigned tasks;

    b. The Defendant failed to warn and instruct users of the PRODUCT of the defective character of the component parts, including the control board, daughter card and/or switch, and/or the need to replace defectively designed, manufactured, and/or assembled parts within the PRODUCT;

  c. The Defendant negligently developed, designed, assembled, inspected, tested, packaged, sold and/or distributed the component parts, including the control board, daughter card and/or switch;

  d. The Defendant negligently failed to take reasonable safety precautions to prevent injuries to users of the PRODUCT, including the Plaintiff;

  e. The Defendant was negligent and careless in such other manners as investigation, discovery and trial shall reveal.

35. As a direct and proximate result of the Defendant's negligence, the Plaintiff was seriously and permanently injured, suffered great pain of body and mind, and was required to expend monies for medical care and attendance and is still unable to attend to his usual activities.

  WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, VALMET, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

## COUNT II – NEGLIGENCE
## ATLAS US

36. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 35 of this Complaint.

37. The Defendant was negligent and careless with respect to the Plaintiff in the following respects:

  a. The Defendant negligently failed to furnish and maintain reasonably safe and proper machinery and/or component parts with which the Plaintiff was to perform his assigned tasks;

      b.      The Defendant failed to warn and instruct users of the PRODUCT of the defective character of the component parts, including the control board, daughter card and/or switch, and/or the need to replace defectively designed, manufactured, and/or assembled parts within the PRODUCT;

      c.      The Defendant negligently developed, designed, assembled, inspected, tested, packaged, sold and/or distributed the component parts, including the control board, daughter card and/or switch;

      d.      The Defendant negligently failed to take reasonable safety precautions to prevent injuries to users of the PRODUCT, including the Plaintiff;

      e.      The Defendant was negligent and careless in such other manners as investigation, discovery and trial shall reveal.

38. As a direct and proximate result of the Defendant's negligence, the Plaintiff was seriously and permanently injured, suffered great pain of body and mind, and was required to expend monies for medical care and attendance and is still unable to attend to his usual activities.

WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, ATLAS US, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

### COUNT III – NEGLIGENCE
### ATLAS UK

39. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 38 of this Complaint.

40. The Defendant was negligent and careless with respect to the Plaintiff in the following respects:

a. The Defendant negligently failed to furnish and maintain reasonably safe and proper machinery and/or component parts with which the Plaintiff was to perform his assigned tasks;

b. The Defendant failed to warn and instruct users of the PRODUCT of the defective character of the component parts, including the control board, daughter card and/or switch, and/or the need to replace defectively designed, manufactured, and/or assembled parts within the PRODUCT;

c. The Defendant negligently developed, designed, assembled, inspected, tested, packaged, sold and/or distributed the component parts, including the control board, daughter card and/or switch;

d. The Defendant negligently failed to take reasonable safety precautions to prevent injuries to users of the PRODUCT, including the Plaintiff;

e. The Defendant was negligent and careless in such other manners as investigation, discovery and trial shall reveal.

41. As a direct and proximate result of the Defendant's negligence, the Plaintiff was seriously and permanently injured, suffered great pain of body and mind, and was required to expend monies for medical care and attendance and is still unable to attend to his usual activities.

WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, ATLAS UK, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

## COUNT IV- BREACH OF WARRANTY
## VALMET

42. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 41 of this Complaint.

43. The Defendant, VALMET, expressly and impliedly warranted that the PRODUCT was merchantable, safe, and fit for a particular purpose. The Defendant had reason to know that the product would be used by the Plaintiff and that the Plaintiff would rely upon the skill and judgment of the Defendant to select and furnish a suitable product.

44. The PRODUCT and the PRODUCT warnings and instructions were defective and therefore the PRODUCT was not merchantable and not safe and fit as warranted by the Defendant. The Defendant breached these warranties to the Plaintiff.

45. Notice of the breach of warranties was given to the Defendant in a reasonable time after the date of the accident.

46. As a direct and proximate result of the Defendant's breaches of warranties, the Plaintiff was seriously and permanently injured, suffered great pain of body and mind, and was required to expend monies for medical care and attendance and is still unable to attend to his usual activities.

WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, VALMET, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

### COUNT IV- BREACH OF WARRANTY
### ATLAS US

47. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 46 of this Complaint.

48. The Defendant, ATLAS US, expressly and impliedly warranted that the PRODUCT was merchantable, safe, and fit for a particular purpose. The

      Defendant had reason to know that the product would be used by the Plaintiff and that the Plaintiff would rely upon the skill and judgment of the Defendant to select and furnish a suitable product.

49. The PRODUCT and the PRODUCT warnings and instructions were defective and therefore the PRODUCT was not merchantable and not safe and fit as warranted by the Defendant. The Defendant breached these warranties to the Plaintiff.

50. Notice of the breach of warranties was given to the Defendant in a reasonable time after the date of the accident.

51. As a direct and proximate result of the Defendant's breaches of warranties, the Plaintiff was seriously and permanently injured, suffered great pain of body and mind, and was required to expend monies for medical care and attendance and is still unable to attend to his usual activities.

WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, ATLAS US, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

### COUNT IV- BREACH OF WARRANTY
### ATLAS UK

52. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 39 of this Complaint.

53. The Defendant, ATLAS UK, expressly and impliedly warranted that the PRODUCT was merchantable, safe, and fit for a particular purpose. The Defendant had reason to know that the product would be used by the Plaintiff and that the Plaintiff would rely upon the skill and judgment of the Defendant to select and furnish a suitable product.

54. The PRODUCT and the PRODUCT warnings and instructions were defective and therefore the PRODUCT was not merchantable and not safe and fit as warranted by the Defendant.  The Defendant breached these warranties to the Plaintiff.

55. Notice of the breach of warranties was given to the Defendant in a reasonable time after the date of the accident.

56. As a direct and proximate result of the Defendant's breaches of warranties, the Plaintiff was seriously and permanently injured, suffered great pain of body and mind, and was required to expend monies for medical care and attendance and is still unable to attend to his usual activities.

   WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, ATLAS UK, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

## COUNT V – SUCCESSOR LIABILITY
## VALMET

57. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 56 of this Complaint.

58. On January 1, 2000, VALMET became liable to the Plaintiff, as the successor corporation, for the damages caused by their predecessor corporation, ATLAS US.

   WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, VALMET, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

## COUNT VI – SUCCESSOR LIABILITY
## BOBST USA

59. The Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 58 of this Complaint.

60. On January 30, 2004, BOBST USA became liable to the Plaintiff, as the successor corporation, for the damages caused by their predecessor corporation, VALMET.

WHEREFORE, the Plaintiff, Ciriaco Pucillo, seeks and demands judgment against the Defendant, BOBST USA, in an amount deemed just and appropriate by the trier of facts together with interest and costs.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS**

Respectfully Submitted,

/s/    Maureen Counihan_____
Maureen Counihan, Esq. (B.B.O. #549098)
Law Offices of Maureen Counihan, P.C.
67 South Bedford Street
Suite 400 West
Burlington, MA  01803
(781) 229-5884

*Attorney For Plaintiff Ciriaco Pucillo*

Dated:    June 30, 2006