UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| **CIRIACO PUCILLO**<br>    Plaintiff<br><br>v.<br><br>**VALMET CONVERTING, INC., ATLAS CONVERTING EQUIPMENT LIMITED, f/k/a VALMET ATLAS PLC, f/k/a ATLAS GROUP AMERICAS LTD, ATLAS GROUP AMERICAS f/k/a ATLAS CONVERTING EQUIPMENT, AND BOBST GROUP SA d/b/a BOBST GROUP USA INC.**<br>    **Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)   C.A. NO. 03-CV-12359 MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED
MOTION TO AMEND THE COMPLAINT**

**Introduction**

This action arises out of injuries allegedly suffered by the Plaintiff, Ciriaco Pucillo, on or about March 22, 2002. On that date, Mr. Pucillo was operating an Atlas Model CSE 1250R Slitter Rewinder (hereinafter the "the PRODUCT") as an employee of Proma Technologies, Inc., (hereinafter "PROMA") in Franklin, Massachusetts. The PRODUCT is equipped with a control board with a spring loaded wire, or "switch", that controls the speed of the machine.

On March 22, 2002, the Plaintiff, was seriously injured when, as a result of a product malfunction, the core sped up to its maximum speed of approximately 3000 feet per minute without warning. The core torqued and was ejected from the machine. The Plaintiff was struck in the face by the ejected core. The Plaintiff alleges that this accident was a result of the improper setting of the speed control switch on the daughter card.

The Plaintiff originally alleged that, for all times relevant to this action, the control board and switch were provided to PROMA by the Defendant, Valmet Converting, Inc. (hereinafter "VALMET"). The Plaintiff further alleged that the switch, including the speed control switch,

had been set by VALMET prior to distribution to PROMA, and that VALMET was aware of the specific application utilized by PROMA of the control boards and switch.

A Complaint was filed relative to Mr. Pucillo's action on October 28, 2003, and was removed to the Federal Court on or about November 26, 2003. Mr. Pucillo alleged that the Defendants[1] failed to warn and instruct users of the PRODUCT of the defective character of the component parts, including the control board and switches, and/or the need to replace defectively designed, manufactured, and/or assembled parts within the PRODUCT; negligently developed, designed, assembled, inspected, tested, packaged, sold and/or distributed the component parts, including the control board and switches; and/or negligently failed to take reasonable safety precautions to prevent injuries to users of the PRODUCT, including Mr. Pucillo.

Discovery has revealed that Atlas Converting Equipment Limited, f/k/a Valmet Atlas Plc, f/k/a Atlas Group Americas Ltd, (hereinafter "ATLAS UK"),[2] sold the PRODUCT to PROMA (f/k/a VanLeer Metalized Products) in 1993. The PRODUCT is a unique product designed specifically for PROMA'S use, with component parts specific to the PRODUCT.

The component parts, including the drive boards, were designed by ATLAS UK. The records regarding the individual piece of equipment, including any modifications that needed to be made to the component parts, were kept in England.

Customers in the US, such as PROMA, that needed replacement parts would get those initially through ATLAS US, a subsidiary of ATLAS UK, and as discussed herein, later through VALMET and then BOBST USA. These entities did not keep an inventory of new Infranor drive boards and would order the part from ATLAS UK. Therefore, if PROMA needed a replacement drive they would contact the US facility (ATLAS US, VALMET, or BOBST USA) who would provide the Atlas slitter serial number to ATLAS UK. ATLAS UK would know what

---

[1] The original Complaint contained counts against the Defendant, Metso Paper, Inc., as parent company of the Defendant, Valmet Converting, Inc. Those counts have been voluntarily dismissed.
[2] ATLAS UK is a foreign corporation located in England at Wolseley Road, Kempston, Bedfordshire, MK42 7XT, United Kingdom. ATLAS UK does not conduct business in the United States except through its United States affiliates/branches: Valmet Converting, Valmet Atlas, Atlas Group Americas and/or Bobst Group USA.

modifications needed to be made to the drive board for that particular serial number. If any modifications need to be made to the board, they would do it in England. The boards were returned to the US facility where they were repackaged and shipped to PROMA.

Drive boards that are sent to the US facility for repair go through a similar process. The boards are sent to the US facility where they are repaired or replaced and returned to the US facility. The boards were returned to the US facility where they were repackaged and shipped to PROMA.

The Plaintiff alleges that ATLAS UK negligently manufactured, assembled or supplied the PRODUCT and/or the component parts, including drive boards and/or daughter cards, and that said negligence caused the PRODUCT to malfunction. Further, the Plaintiff alleges that ATLAS UK negligently failed to warn and instruct users of the PRODUCT of the defective character of the component parts, including the control board, daughter card and/or switch, and/or the need to replace defectively designed, manufactured, and/or assembled parts within the PRODUCT.

The Plaintiff alleges that ATLAS UK expressly and impliedly warranted that the PRODUCT was merchantable, safe, and fit for a particular purpose. The Plaintiff alleges that ATLAS UK had reason to know that the PRODUCT would be used by the Plaintiff and that the Plaintiff would rely upon the skill and judgment of ATLAS UK to select and furnish a suitable product. Further, the Plaintiff alleges that the PRODUCT and the PRODUCT warnings and instructions were defective and therefore the PRODUCT was not merchantable and not safe and fit as warranted by the Defendant. Accordingly, the Plaintiff alleges that ATLAS UK breached these warranties to the Plaintiff.

The Plaintiff seeks to amend his original Complaint to add ATLAS UK as an additional Defendant in this action and to file negligence and breach of warranty claims against ATLAS UK.

As discussed above, ATLAS US was the US facility that initially provided sales and service to PROMA from 1993 until on or about January 1, 2000.  During that period, PROMA would order and receive replacement parts, including drive boards and/or daughter cards, from ATLAS US.  ATLAS US would obtain the replacement parts, including drive boards and/or daughter cards, from ATLAS UK and would ship them to PROMA.  During that period, PROMA would also send drive boards and/or daughter cards in need of repair to ATLAS US.  Again, ATLAS US would send the drive boards and/or daughter cards to ATLAS UK for repair, and return the repaired boards and/or cards to PROMA.

The Plaintiff alleges that ATLAS US negligently manufactured, assembled or supplied the PRODUCT and/or the component parts, including drive boards and/or daughter cards, and that said negligence caused the PRODUCT to malfunction.  Further, the Plaintiff alleges that ATLAS US negligently failed to warn and instruct users of the PRODUCT of the defective character of the component parts, including the control board, daughter card and/or switch, and/or the need to replace defectively designed, manufactured, and/or assembled parts within the PRODUCT.

The Plaintiff alleges that ATLAS US expressly and impliedly warranted that the PRODUCT was merchantable, safe, and fit for a particular purpose.  The Plaintiff alleges that ATLAS US had reason to know that the PRODUCT would be used by the Plaintiff and that the Plaintiff would rely upon the skill and judgment of ATLAS US to select and furnish a suitable product.  Further, the Plaintiff alleges that the PRODUCT and the PRODUCT warnings and instructions were defective and therefore the PRODUCT was not merchantable and not safe and fit as warranted by the Defendant.  Accordingly, the Plaintiff alleges that ATLAS US breached these warranties to the Plaintiff.

The Plaintiff seeks to amend his original Complaint to add ATLAS US as an additional Defendant in this action and to file negligence and breach of warranty claims against ATLAS US.

On January 1, 2000, an Asset Purchase Agreement was entered into by and between Atlas Group Americas, Ltd., (ATLAS UK) acting through its United States branch (ATLAS US) and VALMET, whereby VALMET purchased essentially all of the assets of ATLAS US. Pursuant to the Agreement, VALMET assumed the liabilities of ATLAS US.

The purchase included the facility in North Carolina, the inventory of spare parts, the bank accounts, the receivables and the payables. The purchase price was One Dollar ($1.00). ATLAS US did not survive the purchase of the assets and VALMET continued with the enterprise of ATLAS US.

The Plaintiff alleges that the sale of the assets and liabilities of ATLAS US to VALMET resulted in a de facto merger or consolidation of those entities. As a result of the transaction the purchasing corporation, VALMET, became a mere continuation of the selling corporation, ATLAS US. Therefore, the Plaintiff seeks to add an additional count against VALMET, as the successor corporation to ATLAS US.

VALMET provided sales and service to PROMA from on or about January 1, 2000, until on or about January 30, 2004, as the US facility. During that period, PROMA would order and receive replacement parts, including drive boards and/or daughter cards, from VALMET in North Carolina. VALMET would obtain the replacement parts, including drive boards and/or daughter cards, from ATLAS UK and would ship them to PROMA. During that period, PROMA would also send drive boards and/or daughter cards in need of repair to VALMET. Again, VALMET would send the drive boards and/or daughter cards to ATLAS UK for repair, and return the repaired boards and/or cards to PROMA.

The Plaintiff alleges that VALMET expressly and impliedly warranted that the PRODUCT was merchantable, safe, and fit for a particular purpose. The Plaintiff alleges that VALMET had reason to know that the PRODUCT would be used by the Plaintiff and that the Plaintiff would rely upon the skill and judgment of VALMET to select and furnish a suitable product. Further, the Plaintiff alleges that the PRODUCT and the PRODUCT warnings and instructions were defective and therefore the PRODUCT was not merchantable and not safe and

fit as warranted by the Defendant. Accordingly, the Plaintiff alleges that VALMET breached these warranties to the Plaintiff.

Therefore, the Plaintiff seeks to add an additional count against VALMET, alleging breach of warranty.

On or about October 21, 2003, Metso Paper, Inc. entered into an agreement with Bobst Group, S.A., a Swiss Corporation, , with an entity known as Bobst Group USA Inc., (hereinafter "BOBST USA") by which VALMET sold the business assets acquired from ATLAS US. VALMET did not survive the purchase of the assets, and from on or about January 30, 2004, BOBST USA continued with the enterprise of VALMET. Thereafter, BOBST USA has continued to maintain a sales and service network providing service and parts support for the packaging industry, including PROMA.

The Plaintiff alleges that the sale of the assets and liabilities of VALMET to BOBST GROUP SA resulted in a de facto merger or consolidation of those entities. As a result of the transaction the purchasing corporation became a mere continuation of the selling corporation.

The Plaintiff seeks to amend his original Complaint to add BOBST GROUP SA d/b/a BOBST GROUP USA as an additional Defendant, as the successor corporation to VALMET.

The Plaintiff seeks to amend his original Complaint to properly identify the manufacturer of the PRODUCT and the entity/facility commencing with ATLAS US, which continued business as VALMET, and currently conducts business as BOBST USA (hereinafter identified as "ATLAS US/VALMET/BOBST USA"). The Plaintiff alleges that for all times relevant to this action ATLAS UK, ATLAS US and VALMET were aware of the specific application utilized by PROMA and were responsible to ensure that the "switch" on the daughter card was set correctly. The Plaintiff alleges that they are liable to the Plaintiff for negligence and breach of warranty resulting in his injuries.

Unless the opposing party can show prejudice, bad faith, or undue delay, a court should grant leave to file an amended pleading. *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 230 (1962). Leave to amend should be freely given when justice so requires. Fed.R.Civ.P. 15(a); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 665 (3d Cir. 1999).

The Plaintiff is filing his Amended Complaint along with this pleading.

Accordingly, the Plaintiff respectfully requests that this Court grant him leave to file his Amended Complaint to more particularly allege Plaintiff's allegations and to add additional Defendants. For these reasons Plaintiff asks the Court to grant leave to file the amended pleading.

Respectfully Submitted,

/s/ _ Maureen Counihan_____  
Maureen Counihan, Esq. (B.B.O. #549098)  
Law Offices of Maureen Counihan, P.C.  
67 South Bedford Street  
Suite 400 West  
Burlington, MA  01803  
(781) 229-5884

*Attorney For Plaintiff Ciriaco Pucillo*

Dated: June 30, 2006