UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| CIRIACO PUCILLO ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | C.A. NO. 03-CV-12359 MLW |
| ) | |
| VALMET CONVERTING, INC. ) | |
|     Defendant ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE EXPERT TESTIMONY

I. INTRODUCTION

The Defendant has filed a motion to preclude Plaintiff's liability expert, John Orlowski, , P.E., CSP, BCFE, from testifying at trial. Although the Defendant professes fidelity to the principles enunciated in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. Ltd, v. Carmichael*, 526 U.S. 137(1999), the Defendant ignores the Supreme Court's admonition that "reliability proceedings should be avoided "in ordinary cases where the reliability of an expert's method is properly taken for granted" *Id.* at 1176. Here, Mr. Orlowski has not used controversial principles or untested methodologies to arrive at his opinions. Nor are his conclusions removed from the testimony he reviewed and/or the materials he analyzed. Indeed, it is plain that the Defendant has confused grounds for cross examination with grounds for expert exclusion. The Defendant may disagree with Mr. Orlowski's conclusions, but that is not a basis for preclusion.

## II. BACKGROUND

John Orlowski, P.E., CSP, BCFE, has been identified as an expert to testify on behalf of the Plaintiff. He has prepared a detailed report in connection with this matter, which includes his *Curriculum Vitae* and identifies the materials he reviewed in prior to preparing his report. (See Report, attached hereto as Exhibit A). Mr. Orlowski was also deposed in connection with this matter. A copy of excerpts from his deposition transcript is attached hereto as Exhibit B).

John Orlowski is licensed as a Mechanical Engineer in Massachusetts, New York and Maine (Exhibit B, p. 6). According to Mr. Orlowski, there is a lot of overlap among the various types of engineering but a mechanical engineer generally designs machinery and equipment. (Exhibit B, p. 9)

Mr. Orlowski is a Board Certified Safety Professional in Engineering Aspects. In this capacity he studies safety and health problems, develops information on accident causes and recommends control procedures to prevent safety and health problems and personal injury. (Exhibit B, p. 10). Mr. Orlowski is also a Board Certified Forensic Engineer, which is someone that has demonstrated that they have achieved a high level of forensic examination capabilities based on their skill, knowledge, experience, education and training. (Exhibit B, p. 11).

Specifically pertinent to this action, Mr. Orlowski is experienced in the design of machinery built to a customer's specific qualifications. (Exhibit B, pp. 12-15) His experience includes truck dock levelers, (Exhibit B, p. 16), hydraulic dock levelers, (Exhibit B, p. 17), punch presses (Exhibit B, pp. 18 -19). Further, John Orlowski has designed web handling machinery such as slitters and winders. (Exhibit B, pp. 21-22).

Mr. Orlowski reviewed all of the depositions taken in this matter, three separate investigation reports, the Atlas Slitter Operating Guide, the electrical schematics, and various correspondence related to the matter. (Exhibit A, Appendix C).

Mr. Orlowskis report carefully delineates the subject matter and the basis for his opinions. John Orlowski opined that this accident was caused because the switch was not properly set, such that if the torque was reduced, had the switch been properly set, it would have prevented an overspeed of the motors. (Exhibit B, p. 45). Mr. Orlowski knows the function of the switch based on reports by the representatives of the manufacturers of the machine as well as deposition testimonies and reports in this case. (Exhibit B, pp. 53, 55).

According to Mr. Orlowski it is not improper to use a switch on a drive board as long as the switch stays in the proper setting and that setting is properly secured and fixed (Exhibit B, p. 57). However, if a supplier cannot ensure the switch will remain in its proper position then it should not be a switch. (Exhibit B, p. 60).

According to Mr. Orlowski, Valmet was obligated to supply the specific part that was ordered. (Exhibit B. p.88) As discussed at length in the Plaintiff's Memorandum in Opposition to Defendants Motion for Summary Judgment, the part that was ordered was a unique part that went into a unique piece of equipment. Mr. Orlowski's testimony was simply that as a supplier of the drive board, which they knew was a unique piece of equipment, they had an obligation to ensure that the product supplied was the product ordered. (Id.) Therefore, it is not proper for a supplier such as Valmet Converting to furnish a drive board with a switch that is not set. If Valmet cannot ensure the switch will remain in its proper position then it should not be a switch. In that case it could be permanently latched or soldered, such as was done after this accident.

Mr. Orlowski therefore opined that Valmet Converting was negligent in failing to inspect the switch on the drive board prior to shipping the board to Proma and in failing to set and secure the switch on the drive board prior to shipping the board to Proma. (Exhibit A, pp. 8-9) Valmet does not need to redesign or remanufacture the part to ensure it is the part ordered. Ron Purcell testified that the switch could be soldered easily, inexpensively, and without compromising the integrity of the drive.

Alternatively, Mr. Orlowski opined that Valmet Converting was negligent in failing to instruct Proma to check the drive board switch for proper location. (Exhibit A, p. 8) Mr. Orlowski opined that Valmet Converting technicians were on site at Proma for service calls and failed to avail themselves of the opportunity to instruct the Proma employees about the switch setting. (Exhibit A, p. 7)

Mr. Orlowski opined that the negligence of Valmet Converting caused the Atlas Slitter to operate in an unreasonably dangerous manner and was a direct and proximate cause of the Plaintiff's accident and consequent injuries. (Exhibit A, p. 9)

## ARGUMENT

As stated in the Defendant's motion, Fed. R. Evid. 702 affirms the trial judge's role as gatekeeper and provides three specific standards to assess proffered testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
> (1)   the testimony is sufficiently based upon sufficient facts or data,
> (2)   the testimony is the product of reliable principles and methods, and
> (3)   the witness has applied the principles and methods reliably to the facts of the case.

*See*, Fed. R. Evid. 702.

The Plaintiff must establish that the proffered testimony is reliable, that the witness must be qualified by knowledge, skill experience, training, or education, and that the principles and methods must have been properly applied to the facts of the case. United States v. Monteiro, 407 F.Supp.2d 351, 356 (D. Mass. 2006); *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998).

The ultimate purpose of this analysis is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue. In *Kumho Tire Co. Ltd, v. Carmichael*, 526 U.S. 137 (1999), the Court emphasized that judges, when faced with expert testimony, must determine whether the testimony has a "reliable basis in knowledge and experience with the relevant discipline". *Kumho*, 526 U.S. at 149. The Court gave the trial judge flexibility in making a "reliability" determination taking the following factors into account: the nature of the case, the expert's particular expertise, and the subject of his testimony. *Kumho*, 526 U.S. at 150. In *Kumho*, the Court further emphasized that the <u>Daubert</u> list of factors was not exclusive and may not always apply to the testimony at issue and that the trial court was free to consider whether other reasonable measures of reliability may be appropriate to the evaluation of the expert testimony. *Kumho*, 526 U.S. at 152.

Typically, a product liability case involves an issue regarding the link between the product and the injury, and the party seeking to introduce expert testimony must generally show that the testimony on this subject is based upon scientific methodologies that have been established as independently reliable and trustworthy. However, the instant case presents a different issue. There is no genuine dispute that the improper switch setting was a factor in causing the Slitter to malfunction, which caused injury to the Plaintiff. The issues to be

determined center around the responsibilities of a distributor, Valmet Converting, of a unique component part, the drive board, which required modification for Proma's specific application.

The Defendants characterization of Mr. Orlowski's experience in the industry as being inapplicable is a factor that goes to the weight of the evidence, not to its admissibility. Mr. Orlowski clearly has experience relative to the industry practice of inspecting component parts before shipping them to a customer.

The fact that Mr. Orlowski elaborated on his opinion that the product should be inspected, to include the possibility that proper ordering may obviate the need to inspect every product, does not translate to him abandoning his original opinion. His opinion did not change when he maintained that a distributor had an obligation to check the product. His experience was that the distributor had some quality control department to ensure that products to be distributed were what was ordered. Obviously, if the product is ordered correctly the quality control should not identify a discrepancy. Counsel's examination of Mr. Orlowski, while entertaining, did not force Mr. Orlowski to back down from his original opinion that Valmet should have inspected the product. Valmet concedes that they did no inspection whatsoever. They apparently relied completely on their supplier, Atlas UK, to set the switch to the required setting.

The Defendant ignores the opinion proffered by Mr. Orlowski that Valmet's technicians were on site at Proma for service calls on at least three occasions and failed to avail themselves of the opportunity to instruct Proma employees about an item that was crucial to the machine operation and operator safety.

The Defendant also argues that Mr. Orlowski's opinion that Valmet Converting had a duty to instruct Proma on the correct switch position is based on an erroneous factual

assumption. As set forth in detail in the Plaintiffs Opposition to the Defendants Motion for Summary Judgment, Valmet provided no training to any of the Proma technicians and did not include any instructions in the operating manual written specifically for that Slitter. Moreover, Valmet's senior field service technician, Ron Purcell, acknowledged that Proma would probably not know the specific settings for the boards. The fact that Mr. Orlowski did not remember seeing a schematic that contains the correct switch position does not negate the overwhelming evidence that Valmet did nothing to instruct Proma on the proper switch setting.

Mr. Orlowski's opinion in this respect is based on reliable principles or methods. Clearly, a jury would be warranted in finding that Valmet was negligent in their lack of training or instruction regarding the switch position. Valmet's president testified that the Valmet service technicians were trained with respect to the proper switch position. They would have been shown specifically. Apparently they decided to keep that information to themselves.

Valmet was in a superior position to appreciate the significance of the switch setting and acknowledged that Proma did not know the correct setting. Mr. Orlowski's opinions regarding the obligations of a supplier of a component part are not contrary to Massachusetts law. As outlined in the Plaintiffs Memorandum in Opposition to the Defendants Motion for Summary Judgment, the Defendant erroneously relies on *Mitchell v. Sky Climber, Inc.*, 487 N.E. 2d 1374 (1986). *Mitchell* is not dispositive to the issues raised in the instant case.

Under the circumstances of this case, the Plaintiff submits that this Court should consider whether other reasonable measures of reliability may be appropriate to the evaluation of the expert testimony. *See, Kumho Tire Co. Ltd, v. Carmichael*, 526 U.S. 137 (1999). Mr. Orlowski's opinions are based on his background, expertise and years of experience in the field of management and machine design engineering, and recognized principles of machinery safety

relating to specific issues raised by the events in this case (Exhibit B, p. 2) Mr. Orlowski's expertise includes drafting and design of diverse machinery, including web-handling equipment such as winders and slitters, conveyors, machine tools and related controls, safety devices and warnings and experience with the distribution of component parts. (Exhibit B, p. 2).

It is irrelevant that Mr. Orlowski does not have a license as an electrical engineer. While the switch at issue is an electrical switch, that is not an issue in this case. The issue is the nature of the relationship between Valmet Converting and Proma Technologies, the manufacture of the Atlas Slitter containing drive boards that require modification before use, failure of Valmet, the supplier of the drive board to inspect and set the switch prior to shipping it to Proma and the feasibility of permanently hooking the switch. None of those issues requires an electrical engineer. Those issues require a careful analysis of the testimony of the parties involved in the dispute, a review of the investigation reports generated following the accident and an understanding of the industry as it relates to the supplying of a unique part to be used in a unique piece of equipment.

The Defendant makes a quantum leap from Mr. Orlowski's lack of experience with drive boards to reach the conclusion that he is not qualified to opine on the obligations or practices of distributors of electronic circuit boards. The fact that Mr. Orlowski's experience is with parts other than drive boards is irrelevant. Although the product involved in this litigation is a drive board, the same principles would apply regardless of the specific part. Mr. Orlowski has experience in the sale and distribution of special ordered component parts.

John Orlwoski reviewed all of the depositions taken in this matter (compare the Defendant's expert Michael Grady who reviewed only two depositions, Grady report, Exhibit C, p. 1), reviewed the investigation reports and photographs taken after the accident (compare

Michael Grady who only reviewed the photographs, Grady report, Exhibit C, p. 1). Mr. Orlowski has relevant experience in the manufacture and distribution of unique component parts and understood the process by which Proma ordered their parts. Michael Grady had never heard of such a thing, and was not familiar with the process by which Porma ordered its parts. (See excerpts of the deposition of Michael Grady, attached hereto as Exhibit D, pp. 62-65).

## III. CONCLUSION

The slings and arrows that the Defendant has launched against Mr. Orlowski all fall wide of the mark. The Defendant can not point to any engineering principle or methodology Mr. Orlowski has used in reaching his opinions which is considered unreliable or not generally accepted. The Defendant can point to no conclusion which is unsupported by evidence or any testimony in his deposition which compromises his conclusions. In short, once the adversarial distortion is removed from the Defendant's memoranda, there is no basis to disqualify John Orlowski from testifying as an expert. The Plaintiff submits that the testimony of John Orlowski meets the prerequisites of admissibility, and that the Defendant's motion should thereby be denied.

Respectfully Submitted,


/s/     Maureen Counihan
Maureen Counihan, Esq. (B.B.O. #549098)
Law Offices of Maureen Counihan, P.C.
67 South Bedford Street
Suite 400 West
Burlington, MA  01803
(781) 229-5884

*Attorney For Plaintiff Ciriaco Pucillo*

Dated: July 31, 2006