```
 1                                    Volume:   I
                     📄 COPY           Pages:    1 - 107
 2                                    Exhibits: Per Index

 3
                     UNITED STATES DISTRICT COURT
 4                 FOR THE DISTRICT OF MASSACHUSETTS

 5
                                  C.A. NO.:  03-CV-12359 MLW
 6

 7
         ------------------------------
 8       CIRIACO PUCILLO,              )
                    Plaintiff,         )
 9                                     )
            vs.                        )
10                                     )
         METSO PAPER, INC., and        )
11       VALMET CONVERTING, INC.,      )
                    Defendants.        )
12       ------------------------------

13

14           DEPOSITION OF FRANK H. SERENO, called
         as a witness by and on behalf of the Defendant,
15       Valmet Converting, Inc., pursuant to the applicable
         provisions of the Federal Rules of Civil Procedure,
16       before Donna M. DiCarlo, Registered Professional
         Reporter and Notary Public in and for the
17       Commonwealth of Massachusetts, taken at Proma
         Technologies, 24 Forge Park, Franklin,
18       Massachusetts, on Friday, December 3, 2004,
         commencing at 10:02 a.m.
19

20

21                  *   *   *   *   *   *   *   *   *   *

22                        TARALLO & TARALLO
                      PROFESSIONAL COURT REPORTERS
23
                             P.O. BOX 85
24                  AUBURN, MASSACHUSETTS 01501
         TEL: (508) 832-0048             FAX: (508) 832-0209
```

1  understanding is?
2      A.   My understanding is that the switch in
3  question can be in multiple positions to perform
4  different electronical functionality.
5      Q.   And do you have an understanding as you
6  sit here today as to what Van Leer Metalized
7  Products procedure was with regard to the
8  inspection and setting of that switch on the drives
9  before they were installed in the machine?
10     A.   I understand that there was no setting
11 responsibility for Van Leer to set the switch.
12     Q.   And that understanding comes from where?
13     A.   Talking with our people.
14     Q.   You say no setting responsibility.  Would
15 that mean that Van Leer didn't look at the switch
16 and didn't set the switch?
17     A.   No.  It meant we had no responsibility to
18 set the switch.
19     Q.   Well, I'm trying to find out factually
20 what it is you did as opposed to your opinion or
21 conclusion or responsibility.
22          When the drive arrived at your shop --
23 let's take Van Leer first and then we'll take Proma
24 Technologies -- during the time period, this is Van

1  Leer, you don't know whether it was inspected upon
2  receipt; is that correct?
3       A.   That's correct.
4       Q.   You don't know whether it was inspected
5  upon storage, correct?
6       A.   Correct.
7       Q.   Do you know whether or not it was
8  inspected before it was installed?
9       A.   No.
10      Q.   Do you know whether the location of the
11 switch was checked by anyone at Van Leer?
12      A.   I don't believe it was checked.
13      Q.   The drives were all installed by Van Leer
14 between 1993 and 2000, correct?
15      A.   Replacement drives?
16      Q.   Yes.
17      A.   I would guess that is correct.  Most of
18 them were.  Some may not have been.  They may have
19 been installed by Atlas repair people.
20      Q.   Do you have any records that would show
21 which drives were installed by Van Leer and which
22 drives were installed by Atlas repair people?
23      A.   I don't believe those exist.
24      Q.   Let's talk about Proma Technologies.  The