UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| **CIRIACO PUCILLO**  )<br>    **Plaintiff**          )<br>                             )<br>v.                         )<br>                             )<br>**VALMET CONVERTING, INC.** )<br>    **Defendant**        ) | C.A. NO. 03-CV-12359 MLW |

**PLAINTIFF'S RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS OF RECORD TO WHICH THERE IS NO GENUINE ISSUE AND PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

Defendant, Valmet Converting has, in support of its motion for summary judgment and pursuant to Local Rule 56.1, submitted a Statement Of Material Facts Of Record To Which There Is No Genuine Issue. Except as otherwise set forth below, the Plaintiff adopts the Material Facts as stated by the Defendant. Specifically, the Plaintiff does not adopt the following facts:

.

SMF 7.     Documents produced by Proma do contain serial numbers of the rewind arm drive boards.  (Attachment 11)

SMF 21.    Although the identity of the board was not recorded, Ron Purcell, circled POS 2 on the applicable schematic after the accident, indicating that it was a M59. (See Plaintiff's SMF, below )  Further, Ron Purcell had no memory of ever seeing a M55 at the Proma facility.  (See Plaintiff's SMF, below )

SMF 24.    This statement is based solely on the testimony of Paul Langley who has no involvement with the changing of the boards and admitted that he "cannot

1

really get technical" about daughter cards and mother boards. (Plaintiffs Attachment 5, p. 34)

SMF 26.  Proma has produced documents regarding the purchase of drives by Proma. The Plaintiff concedes that the exact number cannot be determined.

SMF 28.  The Plaintiff adopts the statement, in general, however points out that regardless who purchased the drives, they were purchased from the Defendant.

SMF 29.  The testimony has been that all drives purchased after the initial installation were from the entity in North Carolina, regardless of name of the company at any particular time. Proma has produced documents identifying some of the purchases.

SMF 32.  Documents produced by Proma contain the serial numbers on the purchase orders.

SMF 70.  John Orlowski offers several opinions, which are delineated in his report and his deposition testimony.

SMF 71.  John Orlowski offers several opinions, which are delineated in his report and his deposition testimony.

SMF 72.  This statement is so overbroad that it is impossible to adopt. Clearly, Valmet Converting knew of Promas specific application (See Plaintiffs SMF, below )

SMF 78.  The standard operating procedure for boards that needed to be repaired would be to send the boards to Atlas UK, who would in turn, bulk shipped things to Valmet Converting. In North Carolina, Valmet Converting employees would break them down, segregate them, repackage them and ship them to the various customers. (Attachment RH, p. 42, Attachment RL, p. 72).

SMF 80.   The testimony describing shipments made directly to the purchaser did not necessarily pertain to Proma. There is no evidence that Proma ever received a shipment directly from Atlas UK.

The Plaintiff submits the following Additional Facts. For the convenience of the Court, the referenced attachments are as follows:

Attachment 1:     Deposition Excerpts of Ron Purcell
Attachment 2:     Deposition Excerpts of Robert Lyons
Attachment 3:     Deposition Excerpts of David Peavy
Attachment 4:     Deposition Excerpts of Harold Isherwood
Attachment 5:     Deposition Excerpts of Paul Langley
Attachment 6:     Deposition Excerpts of Rick Howe
Attachment 7:     Deposition Excerpts of Frank Sereno
Attachment 8:     Deposition Excerpts of John Orlowski
Attachment 9:     Proma Technologies investigation report
Attachment 10:    Ron Purcell's report
Attachment 11:    Various purchase invoices
Attachment 12:    Records pertaining to service calls
Attachment 13:    Proma Visit January 2000
Attachment 14:    Electrical schematic
Attachment 15:    Report of John Orlowski

The Plaintiff states the following additional facts:

1.   Proma purchased the Atlas Slitter CSE1250R, which was assigned the contract number 92036. That contract number is unique to that piece of equipment. (Attachment 1 pp. 22, 23, 27, Attachment 6, p. 20).

2.   The contract number would distinguish Proma's Atlas slitter from any other Atlas slitter in America. No two machines are alike as the machines were custom built. (Attachment 2, pp. 32-33)

3. Operating guides are provided to customers with the equipment. The operating guides pertain specifically to that individual piece of equipment, and there is a different guide for each piece of equipment. (Attachment 1 pp. 33-34).

4, Once the Atlas Slitter was delivered to Framingham, Robert Lyons , Valmet;s president, became the primary contact. (Attachment 2, p. 36)

5. According to Robert Lyons, "if the machine is built in England and running here, we want them to look to us (Valmet Converting) for spares and service. I would introduce myself and convince them to deal directly with us rather than going back to England for everything." (Attachment 2, p. 37).

6. Rick Howe has been the customer service manager for Valmet Converting for all times relevant to this action. Customers in US that had Atlas slitters would order spare parts through him via Atlas. (Attachment 6, pp. 8-12)

7. Ron Purcell, Valmet Converting's senior field service manager, agreed that if Proma needs a board they contact Valmet Converting in North Carolina (Attachment 1, p. 44)

8. When replacement drives are ordered, the customer gives Valmet Converting the machine model and serial number. The records pertaining to that serial number are kept in UK. (Attachment 6, p. 23)  Atlas in England absolutely knew the correct position of the switches. (Attachment 2 p. 67)

9. Valmet Converting has a copy of the most of the electrical schematics for the Slitters in the US. (Attachment 1, p. 54, Attachment 2 p. 73)

10. Valmet technicians were trained with respect to the proper switch position. They would have been shown specifically. (Attachment 2 p. 67)

11. The serial number on the slitter would determine whether there was any special setup on any of the drives. (Attachment 6, p. 27)

12. When Proma calls Valmet Converting, the salesperson gets the serial number, then calls Atlas UK and gives them serial number and orders the board. (Attachment 6, p. 28)

13. Paul Langley orders the spare drives for Proma. (Attachment 5, p. 23). The different drives purchased by Proma all come from Valmet Converting. (Attachment 5, pp. 60-61).

14. All of the Proma employees deposed testified that they relied on Valmet Converting to set the switch, and believed that the boards were ready for installation as received. (Attachment 7, p. 50; Attachment 5, pp. 73, 78; Attachment 4 p. 39).

15. At one time, Paul Langley attempted to purchase the drives directly from Infranor, but was unable to do so because he was informed that Infranor produces generic boards that are set up by Atlas. (Attachment 5, pp. 72-73).

16. Customers that order drives through Valmet Converting, pay Valmet Converting. They are not billed by Atlas UK. (Attachment 2, p. 62).

17. Under some circumstances the cost to the customer includes any modifications that need to be made to the board to make the board suitable for their particular application. (Attachment 2, p. 62). The charge for setting up the boards is in the price of the board. (Attachment 2, p. 63).

18. The switch on daughter board selects whether you are tachometer feedback or armature feedback for speed detection. There are no applications at Proma that would use the tachometer feedback. (Attachment 1, pp. 65-66)

19. The Atlas engineer who originally set the controls on the Slitter in 1993 would have decided that position's setting. (Attachment 2, p 55, Attachment 1, pp. 73). The setting would not have changed since original design. (Attachment 2, pp 54-55)

20. There is no reason for Proma to ever change that switch. (Attachment 1, p 141).

21. There is no way of knowing if a switch is unhooked other than looking at it. (Attachment 1, p 140).

22. Information that there are modifications to be done to the drive would be in England. The drives would be modified before they get to Proma. Ron Purcell believed that the switches were set in the correct position before they sent to Proma. (Attachment 1, pp. 43, 140). Further, he has reason to believe that when repaired boards are returned to Proma the switches would be set. (Attachment 1, p. 75).

23. There has been no testimony that anyone from Valmet Converting ever instructed anyone from Proma to inspect the switch on the daughter card before installing the board. Harold Isherwood, Proma's operations manager, testified that Proma was not provided with any training regarding inspection of the boards. (Attachment 4, p. 39). Proma does not check the switches (Attachment 6, p. 51).

24. Neither Ron Purcell, the Valmet Converting service manager nor Robert Lyons, Valtmet Converting's president mentioned any need to inspect the drive when changing it, (Attachment 1, p.118, Attachment 2, p.79)

25. There are no written materials that indicate that a visual inspection should be done. (Attachment 1, p.118)

26. There is no reference in operating manual provided for this unique piece of equipment as to the proper position of the switch. (Attachment 1, p. 91)

27. The Proma technicians received no training regarding the removal of the drives, the installation of the drives or the repair of the drives. (Attachment 3, pp. 36, 41)

28. No one from Atlas or Valmet ever told David Peavy, the Proma technician, that the switches should be checked when the drives are installed. (Attachment 3, p. 41)

29. Proma's normal practice was limited to compare a drive that was taken out with that is being put in to assure that they had the right drive. (Attachment 3, p. 41)

30. Ron Purcell was responsible for installation, commissioning, operator training, maintenance training and field service and repair of Atlas machines. His training from Atlas consisted of going to England and receiving training on the machines there. (Attachment 1, pp. ).

31. Ron Purcell acknowledged that Proma would probably not know the specific settings for the boards. (Attachment 1, pp. 53-54). Nor would the operator of the Slitter know that there was a problem with the drive board. (Attachment 1, p. 116).

32. After the accident, the Proma technicians first checked the electrical connections and then tested the core and arms. (Attachment 3, p. 72)

33. The Proma technicians were not able to understand the cause of the accident, and requested service from Valmet Converting. (Attachment 3, p. 73)

34. The Proma technicians did not remove any of the drive boards from the rewind arms. The drive boards were removed when Ron Purcell came. (Attachment 1, p. 136, Attachment 3, p. 73)

35. As of March 2002 David Peavy, a Proma technician, did not have an understanding as to the correct position of the switch. (Attachment 3, p. 77)

36. Ron Purcell's investigation determined that the drive for controlling arm 2 left had the switch in the neither the armature voltage feedback nor tachometer feedback position. Also, arm 2 right was in the correct position, 1 left was in the wrong position, 4 right was in the neither position, and 5 left was in the neither position. (Attachment 1, p. 138, Attachment 10) Further, some drives in the inventory were found to require the latch to be set. (Attachment 9)

37. The Proma technicians do not do repairs on the drives or daughter cards (Attachment 5, p. 76). Instead, when a technician needs to change a drive board they get one from inventory. (Attachment 5, p. 42).

38. Ron Purcell did no training as far as repairing any components on machine. Normally if a component part fails the customers are instructed on how to remove the defective one and how to install the new one. (Attachment 1, pp. 14, 58).

38. No other facilities in the US besides Valmet Converting service Atlas slitters. (Attachment 1, p. 19). Valmet Converting does not perform sales or service for any other slitters, other than Atlas Slitters. (Attachment 1, p. 26). If the owner of an Atlas Slitter in the US has a problem with their slitter, they call Valmet Converting. (Attachment 6, p. 18).

39. The standard operating procedure for boards that needed to be repaired would be to send the boards to Atlas UK, who would in turn, bulk shipped things to Valmet Converting. In North Carolina, Valmet Converting employees would break them

down, segregate them, repackage them and ship them to the various customers. (Attachment 6, p. 42, Attachment 2, p. 72).

40. If a customer has a problem with the Atlas Slitter that their own people cannot solve, they call in Valmet technicians because the technicians have superior knowledge with respect to those pieces of equipment. (Attachment 2, p. 68).

41. An Atlas (Valmet Converting) engineer visited the Proma facility on January $4_{th}$ and $5_{th}$ ,2000. The number one objective was to make "overall check of the machines". After number 1, handwritten note indicates "drive problems". (Attachment 2, p. 90, Attachment 13).

42. On January 27, 2000, Proma sent an Infranor drive board M59 to Valmet Converting for repair. (Attachment 11).

43. Robert Lyons acknowledged that given that a service technician was there in beginning of January, and 2-3 weeks later Proma sent in a board, it is reasonable to assume that it relates to particular inspection. (Attachment 2, pp. 94-95).

44. On February 9, 2000, another Infranor drive board M59 was sent by Proma to Valmet Converting to be tested and repaired. (Attachment 11)

45. From August 2-4th, 2000, Valmet was at the Proma facility for a service call. (Attachment 12). As part of the service call Valmet may have done a routine inspection of the entire machine. (Attachment 1, pp. 85, 87).

46. From September 18th-21st, 2000, Valmet was at the Proma facility to "trouble shoot and calibrate drive system on Atlas Slitter". (Attachment 12) This service call may have dealt with the Infranor drive boards. (Attachment 1, p. 97, Attachment 2, p. 116).

47. "Trouble shoot and calibrate drive system on Atlas Slitter", means tune it up, get it running properly." (Attachment 2, pp.106-8)

47. Valmet's service technicians would be expected to know a particular machine's settings. (Attachment 2, p.85)

48. On October 24, 2000, Proma sent in an Infranor drive M59 with daughter card for repair. (Attachment 2, pp.109-110, Attachment 11). Robert Lyons acknowledged that it is possible that one of the problems the technician found on his visit pertained to this particular Infranor drive board. (Attachment 2, p. 110).

49. On May 2, 2000, Proma ordered a new Infranor drive board M59 from Valmet Converting. (Attachment 11)

50. On February 6, 2001, Proma sent in an Infranor drive M59 with daughter card to be tested and calibrated. (Attachment 11)

50. On May 18, 2001, Proma sent in two Infranor drives (both M59) for repair. (Attachment 11)

51. From November 14th-16th, 2001, Valmet was at the Proma facility for a service call on this Slitter. The service technician was to trouble shoot drives on Atlas Slitter (Attachment 2, pp. 121-122, Attachment 1, p. 105)

52. The examination could have involved all of the drives and it is not possible to trouble shoot the drives without doing a physical or visual inspection of the drives. (Attachment 2, pp. 122-123)

53. Proma's slitter, number 92036 uses only one model number Infranor board, SMVE2420M59, hereinafter M59. (Attachment 1, p. 45)

54. After Valmet Converting transitioned from the M55s to the M59s, the M55s were discontinued. (Attachment 1, pp. 46, 48)

55. Ron Purcell has visited Proma on a number of occasions and does not recall seeing any M55s. (Attachment 1, p. 45).

56. David Peavy identified the schematic detailing the board in the machine at the time of the accident. (Attachment 14) The document identified by Mr. Peavy has a circle around #2 and a line to note on bottom of page, note says set S-1 to position M55, set S-1 to position 2, M59. (Attachment 3, pp. 93-94).

57. David Peavy believes that Ron Purcell circled the number 2 after the accident, when Mr. Purcell was explaining to him that he had found the switch unhooked. (Attachment 3, p. 95).

58. After the accident, Ron Purcell soldered hooks on other boards after accident. (Attachment 1, p. 141). Soldering the hooks is not expensive or time consuming. (Attachment 1, p. 143).

59. Hooking the switch permanently does not compromise the operation of the machine. (Attachment 1, p. 142).

60. Ron Purcell does not know why the switches were not soldered prior to the accident. (Attachment 1, p. 143).

61. Robert Lyons agreed that if the switch was hooked permanently prior to this accident it may not have happened. (Attachment 2, pp. 143-44).

62. If the speed control switch had been set properly, the core would not have been ejected. (Attachment 1, pp. 148-49). If the speed control switch had been set

correctly, the fact that the arms lifted off would not have caused the core to eject. (Attachment 1, p. 149).

63. John Orlowski, P.E., CSP, BCFE, testified that he believes this accident was caused because the switch was not properly set, such that if the torque was reduced, had the switch been properly set, it would have prevented an overspeed of the motors. (Attachment 8, p. 45).

64. Mr. Orlowski further testified that it is not proper for a supplier such as Valmet Converting to furnish a drive board with a switch that is improperly set. (Attachment JO, p. 62). If a supplier cannot ensure the switch will remain in its proper position then it should not be a switch. (Attachment 8, p. 60).

65. Mr. Orlowski opined that Valmet Converting was negligent in failing to inspect the switch on the drive board prior to shipping the board to Proma. (Attachment 15, p. 8).

66. Mr. Orlowski opined that Valmet Converting was negligent in failing to set and secure the switch on the drive board prior to shipping the board to Proma. (Attachment 15, p. 8).

67. Mr. Orlowski opined that Valmet Converting was negligent in failing to instruct Proma to check the drive board switch for proper location. (Attachment 15, p. 8). Mr. Orlowski opined that Valmet Converting technicians were on site at Proma for service calls and failed to avail themselves of the opportunity to instruct the Proma employees about the switch setting. (Attachment 15, p. 7).

68. Mr. Orlowski opined that the negligence of Valmet Converting caused the Atlas Slitter to operate in an unreasonably dangerous manner and was a direct and proximate cause of the Plaintiff's accident and consequent injuries. (Attachment 15, p. 9)

Respectfully Submitted,

/s/     Maureen Counihan
Maureen Counihan, Esq. (B.B.O. #549098)
Law Offices of Maureen Counihan, P.C.
67 South Bedford Street
Suite 400 West
Burlington, MA  01803
(781) 229-5884

*Attorney For Plaintiff Ciriaco Pucillo*

Dated: July 31, 2006