UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CIRIACO PUCILLO,<br>      Plaintiff,<br><br> v.<br><br>METSO PAPER, INC. AND<br>VALMET CONVERTING, INC.<br>      Defendants. | )<br>)<br>)<br>)<br>)  Case No. 03-CV-12359 MLW<br>)<br>)<br>)<br>)<br>) |

**VALMET CONVERTING'S RESPONSE TO PLAINTIFF'S
LOCAL RULE 56.1 COUNTER STATEMENT
OF MATERIAL FACTS NOT IN DISPUTE**

Defendant Valmet Converting, Inc. ("Valmet Converting"), pursuant to Local Rule 56.1, responds to plaintiff's Counter Statement of Material Facts of Record and plaintiff's Additional Facts, as follows:

**I.  Plaintiff's Response to Valmet Converting's Statement of Material Facts of Record to Which There is No Dispute Is Insufficient.**

Local Rule 56.1 requires an opposition to a motion for summary judgment to include a statement of material facts to which the opposing party contends that there is a genuine issue for trial. Local Rule 56.1 expressly requires the opposing party to cite to "page references to affidavits, depositions and other documentations." Local Rule 56.1. Failure to controvert the moving party's statements in this manner results in the moving party's statements being admitted for the purpose of the motion. Plaintiff has failed to reference any affidavit, deposition, or document in opposing Valmet Converting's SMF Nos. 26, 28, 29, 32, 70, 71, 72, and 80; and, as such, these should be deemed admitted.

**II.  Valmet Converting's Response to Plaintiff's Additional Facts.**

In response to plaintiff's Additional Facts, Valmet Converting states as follows:

1. Disputed in part. The Slitter was purchased for Proma by an unidentified French subsidiary of RP-VL. (Defendant's SMF 2, uncontroverted by plaintiff.) No dispute that the Slitter was Model CSE 1250R, that it was purchased via contract number 92036, and that the contract number is unique to that Slitter.

2. No dispute.

3. Disputed, in part. The record reflects that the document was an operating manual. (Plaintiff's Attachment 1 at 33.) The operating manual was *machine* specific, but not necessarily *model* specific. (Plaintiffs Attachment 1 at 33-34.)

4. Disputed, in part. Lyons was the primary contact only for Valmet Converting. (Plaintiff's Attachment 2 at 36-37.)

5. No dispute.

6. Disputed, in part. The record reflects that when customers ordered parts from Valmet Converting, Valmet Converting in turn ordered them from other vendors in the United States or England depending on the nature of the product. (Plaintiff's Attachment 6 at 12-13.)

7. No dispute.

8. Disputed in part, there is no foundation for Lyons' testimony concerning what Atlas-UK knew or did not know. (Plaintiff's Attachment 2 at 66-67.)

9. No dispute.

10. Disputed. The record shows that the technicians received their information from referencing the electrical schematic drawings. (Plaintiff's Attachment 2 at 67.)

11. No dispute.

12. No dispute.

13.    Disputed.  The testimony cited relates only to Proma's direct purchases.  Spare drives were ordered for Proma by RP-VL affiliated companies as well.  (Defendant's SMF 28, uncontroverted by Plaintiff.)  There is no evidence in the record as to the source of these purchases.  There is no evidence that any RP-VL affiliated company ever purchased parts from Valmet Converting.

14.    Disputed.  Plaintiff cites to only three transcripts, omitting the testimony of Proma employees David Peavey, Greg Hagopian, Alan Petzold and Ciriaco Pucillo.  (See Attachment 1, hereto.)  The cited testimony of Serino, (Plaintiff's Attachment 7 at 50), shows his understanding as of December 3, 2004, after the lawsuit was commenced, and not his knowledge or understanding at any relevant time.  The cited testimony of Langley, (Plaintiff's Attachment 5 at 78), and Isherwood, (Plaintiff's Attachment 4 at 39), do not reference a relevant time period.  None of the persons cited by plaintiff actually changed or replaced a board, so none have first-hand knowledge of any actual reliance.

15.    Disputed.  The record shows that on one occasion, Langley attempted to have a board repaired and was told by the Infranor person that did not know how to set-up the repaired board.  (Plaintiff's Attachment 5 at 73.)

16.    No dispute.

17.    Disputed.  The cited testimony shows that the witness did not know of such occasions.  (Plaintiff's Attachment 2 at 62-63.)

18.    No dispute.

19.    No dispute.

20.    No dispute.

21.    No dispute.

22. Disputed. There is no evidence that modifications are done to the drive boards, and the testimony is that Purcell did not know if the boards are modified for Proma's use. (Plaintiff's Attachment 1 at 43.) Purcell believed that the daughter board switches were set by Infranor or Atlas-UK. (Plaintiff's Attachment 1 at 140.) Purcell did not know if the repaired daughter board switches were set before it was returned to Proma. (Plaintiff's Attachment 1 at 74.)

23. No dispute.

24. Disputed. The cited testimony does not support the claimed assertion.

25. Disputed. The cited testimony does not support the claimed assertion.

26. Disputed, in part. The testimony is that the operating manual does not cover maintenance. (Attachment 2, hereto at 92.) The operating manual covers operational functions. (Attachment 2, hereto at 92.) Maintenance items are covered by drawings, and the drawings expressly advise Proma on the proper switch setting. (Attachment 2, hereto at 93.)

27. Disputed. The cited testimony shows only that Peavey received no training, not all Proma technicians. (Plaintiff's Attachment 3 at 35-36.)

28. No dispute.

29. Disputed. The cited testimony is particular to Peavey's normal practice, not Proma's. (Plaintiff's Attachment 3 at 41.)

30. Disputed. Plaintiff cites no evidence for this assertion, and pursuant to Local Rule 56.1 it is thus invalid. Ron Purcell's position was field service engineer, and field service engineers were responsible for machine installation, commissioning, operator training, maintenance training and field service and repair; but there is no evidence that these services were purchased by Proma. (Attachment 2, hereto at 10-11.) The record shows that the Slitter

was purchased from, installed and commissioned by Atlas-UK, not Valmet Converting. (Defendant's SMF 3, 23; uncontroverted by plaintiff.) And, Proma never entered into a service contract with Valmet Converting. (Defendant's SMF 44, uncontroverted by plaintiff.) Thus, Purcell's general job duties have no relevance to the Proma Slitter.

31. No dispute.

32. No dispute.

33. No dispute.

34. Disputed. Proma technicians regularly removed drive boards from the rewind arms, and swapped them with others or replaced them. (Defendants' SMF 38-41, uncontroverted by plaintiff.) Purcell's testimony was that he did not know whether any board had been removed in connection with Proma's investigation. (Plaintiff's Attachment 1 at 136.) Peavey testified that boards had not been removed during Proma's investigation. (Plaintiff's Attachment 3 at 3.)

35. Disputed, in part. Peavey testified that it was not his job to order drives or change drives, that he never changed a drive board and that he never observed a drive board being changed. (Attachment 3, hereto at 27, 30-31.) Peavey has only swapped drives within the Slitter. (Attachment 3, hereto at 29.) The personnel responsible for changing drives were from the electrical maintenance shop. (Attachment 3, hereto at 30.) Thus, his understanding is immaterial.

36. No dispute.

37. Denied, in part. In addition to obtaining replacement parts from inventory, Proma technicians swap drive boards within the machine from rewind arm to rewind arm. (Defendant's SMF 40, 41; uncontroverted by plaintiff.)

38. Disputed. The cited testimony does not support the assertion. Purcell testified, with respect only to drive boards, that Valmet Converting does not do repairs. (Attachment 2, hereto at 57-58.) Proma technicians similarly did not do repairs to boards. (Plaintiff's SMF 75.) Thus, there was no training to be done. Purcell testified that training was dependent on "what the customer wants." (Attachment 2, hereto at 13) The referenced training is not when a component part fails, but whenever a customer retains Valmet Converting for that purpose. (Attachment 2, hereto at 12-13.)

39. Disputed, in part. The drives are not repackaged, and the drive packages are not opened; they are merely removed from the big shipping box and placed in a smaller shipping box. (Plaintiff's Attachment 2 at 72; Attachment 4, hereto at 33.)

40. No dispute.

41. No dispute.

42. No dispute.

43. No dispute.

44. No dispute.

45. Denied, in part. No dispute that there was a service call on August 2-4, 2000. The testimony is that the referenced items for this service call were the dancer tension control system and that this does "not in any way" pertain to the Infranor drive boards. (Plaintiff's Attachment 1 at 87.) Whether an overall inspection occurred was "possible," but there was no evidence that it occurred. (Plaintiff's Attachment 1 at 87.)

46. Denied, in part. No dispute that there was a service call on September 18-21, 2000. The testimony shows that the reference could have been to the "unwind drive system," the

"main drive system," the "rewind drive system," or the Infranor boards. (Plaintiff's Attachment 1 at 97.) There is no factual basis to make this determination. (Plaintiff's Attachment 1 at 98.)

      47.     No dispute.

      47.[sic] Denied, in part. The testimony does not reference all settings for any particular machine. (Plaintiff's Attachment 2 at 85.)

      48.     Disputed, in part. No dispute that an M59 drive was sent by Proma on or about October 24, 2000. Mr. Lyons testified that "its possible...but its also possible that its not." (Plaintiff's Attachment 2 at 110.)

      49.     No dispute.

      50.     No dispute.

      51.     No dispute.

      52.     Disputed, in part. The testimony refers to all the drive systems–e.g. unwind drives, machine drives, etc. (Plaintiff's Attachment 2 at 122-23.)

      53.     No dispute.

      54.     Denied. Valmet Converting did not transition from M55s to M59s. Infranor, as the drive board manufacturer, transitioned from one generation drive to another. (Plaintiff's Attachment 1 at 45.)

      55.     No dispute.

      56.     No dispute.

      57.     No dispute.

      58.     No dispute, but this is inadmissible subsequent remedial measures pursuant to (Fed. R. Evid. 407.)

59. Disputed. The referenced testimony reflects only Purcell's opinion and as such is not admissible and does not constitute a fact. (Fed. R. Evid. 702.) Also, this testimony is inadmissible as a subsequent remedial measure. (Fed. R. Evid. 407.)

60. Disputed, in part. Purcell also testified that he was unaware of any switch on any Infranor board that were solder, or contemplated soldering.

61. Disputed. The question and answer was subject to an objection, as calling for speculation.

62. No dispute.

64. No dispute as to Mr. Orlowski's testimony, but Valmet Converting disputes its admissibility.

65. No dispute as to Mr. Orlowski's testimony, but Valmet Converting disputes its admissibility.

66. No dispute as to Mr. Orlowski's testimony, but Valmet Converting disputes its admissibility.

67. No dispute as to Mr. Orlowski's testimony, but Valmet Converting disputes its admissibility.

68.     No dispute as to Mr. Orlowski's testimony, but Valmet Converting disputes its admissibility.

Date:  August 18, 2006                           Respectfully submitted,


*/s/ David L. Kelleher*_____
David L. Kelleher, Esq. (B.B.O. #543912)
Thelen Reid & Priest, LLP
701 Eighth Street, N.W., Suite 800
Washington, DC 20004
(202) 508-4000

Mark Petersen, Esq. (B.B.O. #396840)
Michelle Hansen, Esq. (B.B.O. #561477)
Law Offices of Mark Petersen
490 Shrewsbury Street
Worcester, MA  01604
(508) 791-0300

*Attorneys for Defendant Valmet Converting, Inc.*